THE COLUMBIA PHOSPHATE CO. v. THE FARMERS' ALLIANCE STORE.

1. VERDICT—DEMURRER—DEFENDANT.—When a defendant demurs, and the demurrer is sustained and the complaint dismissed as to him, any verdict obtained against his codefendants will not bind him, although he is not specially excepted therefrom in the finding of the jury.

2. PAYMENT—CHARGE.—It is not error to instruct the jury to credit an *admitted* payment.

3. ASSIGNMENT—CHATTEL MORTGAGE—CHARGE.—The charge of the Judge as to the assignment of the mortgage is not objectionable.

4. CHATTEL MORTGAGE—DISCHARGE OF DEBT—CHARGE.—A chattel mortgage debt is discharged by the mortgagee taking exclusive control of the mortgaged property; this was not done in this case, and the charge of the Circuit Judge, in regard to the discharge of the debt, was proper.

5. CHARGE.—Where a Circuit Judge gives two reasons for charging a proposition, and one is sound, it is unnecessary to inquire as to the other.

Before WITHERSPOON, J., Edgefield, November, 1895. Affirmed.

Action by the Columbia Phosphate Company against the Farmers' Alliance Store, Silas Yonce, W. T. Walton, J. W. Edwards, S. M. Smith, J. H. Edwards, W. S. Crouch, B. L. Caughman, W. W. Padgett, W. H. Hazel, and S. L. Ready, on two notes.

The following is the charge of the Circuit Judge:

Now, Mr. Foreman, right here, you will consider this action dismissed as to the defendant, W. T. Walton. Your verdict cannot affect him one way or the other; and why? because he has demurred to the complaint, and that demurrer has been sustained, and he is practically out of this

case. Therefore, you will consider the case with reference to the liability of the Farmers' Alliance Store, and of all the other defendants named, with the exception of defendant, W. T. Walton. Now, one of these notes set up in the complaint and sued upon by plaintiff is dated March 2, 1894, payable to the order of the Columbia Phosphate Company, in the sum of $2,461.27, payable on the 1st of November, 1894, for value received, payable at the Carolina National Bank of Columbia, S. C., with interest after maturity at the rate of eight per cent. per annum. The second note bears the same date as the first, to wit: March 2, 1894; it is payable to the order of the plaintiff, the Columbia Phosphate Company, just as the first note referred to, but it is payable in a different sum or amount, to wit: $2,478.90; it is payable to the order of the same plaintiff, at the Carolina National Bank, in Columbia, for value received, on the 1st of December, 1894, with interest after maturity at the same percentage, eight per cent. per annum. You will see both of these notes are dated the same date, one payable 1st of November, 1894, and the other 1st of December, 1894. Plaintiff alleges that at the time of the beginning of this suit no part of these notes had been paid either by the principal debtor, the Farmers' Alliance Store, or by the alleged endorsers. Plaintiff alleges that at the maturity of the notes they were protested for non-payment, and the endorsers were notified of the protest; the plaintiff, therefore, demands judgment of this Court for the amount due upon these two notes, with the protest fees. Now, it appears here, and it is admitted, that since the commencement of this action, plaintiff has received the sum of $523.54, for which amount the defendants are entitled to a credit on said note as of date, 11 May, 1895; that is admitted by the plaintiff, that if the defendants are liable upon this note, they are entitled to that credit, $523.54, as of date, May 11, 1895. It is alleged by the plaintiff that each of these two notes was signed by S. L. Ready, as president of the Farmers' Alliance Store, that each of the said notes was endorsed

by the other defendants above named, when the notes were delivered to the plaintiff. It is further alleged in the complaint that the consideration of these notes—that is, the matter for which they were given—was commercial fertilizer, furnished by the plaintiff to the defendant, the Alliance Store.

Now, the defendants in their answer—I am now referring to the pleadings—deny their liability upon these notes; they deny the corporate existence; that is, that the Farmers' Alliance Store, alleged in the complaint, was chartered by the legislature; they admit that the Farmers' Alliance Store, at Johnston, S. C., did attempt to execute the two notes referred to in the complaint, and that they were endorsed as alleged, but that the said notes are not legal or binding upon the maker, the Alliance Store, or the endorsers. They allege further, by way of defense, that the Farmers' Alliance Store gave a mortgage on the stock of goods, which mortgage was turned over to plaintiff as payment of the notes referred to in the complaint as payment of the plaintiff's debt; they further allege, that in November, 1894, the Farmers' Alliance Store executed a deed of assignment for the benefit of its creditors; that the plaintiff, the Columbia Phosphate Company, accepted, participated under said assignment, and the defendants were thereby released of their legal obligation to pay this debt. That is what I understand to be the pleadings in the case, according to the complaint and answer.

Now, what must the plaintiff prove under these pleadings? First, that this Farmers' Alliance Store was chartered by the legislature of this State. The plaintiff has introduced here a certified copy of the charter, which I have admitted as evidence, tending to show charter as alleged in the complaint, that they have a charter from the State of South Carolina. They must also prove—you must be satisfied in order for plaintiff to maintain his action—that this debt is due, or some portion of it, on these notes; that the notes were signed by Ready as president of the Alliance

Store, and that they were endorsed by these several defendants, except Walton, as alleged in the complaint; not only so, but that the notes were not paid at maturity, and that at maturity of the notes, the bank protested them for nonpayment, and notified these alleged endorsers of that fact. Now, when one endorses a note for another, for a corporation or individual, when the note matures, then it is the duty of the party who holds the note to notify the endorsers if not paid—if they are living in the same place, or where they can get at them, by giving notice at their place of business; if they do not live in the same community, by sending notice of protest by ordinary mail through the post office.    When the holder does that, he has discharged the duty devolving upon him by the law.    I should have stated to you that the plaintiff must make out his case by what is known as the preponderance, the greater weight, of the testimony.    The weight of the testimony you are to judge of in order to recover.

Under the pleadings, one of the questions of fact to be submitted to you is, did these endorsers of these notes take a mortgage from the Farmers' Alliance Store?  If you conclude they did, then did they assign and transfer that mortgage to the plaintiff?  Well, in order to show that, you must be satisfied that they assigned it and transferred it to the agent or attorney of the Farmers' Phosphate Company, that in transacting this business, accepting it, he was acting within the scope of his agency as attorney representing the plaintiff.    Now, it is alleged that this mortgage was transferred and accepted as payment of these debts.    Now, that is a question of fact.    If I owed you, Mr. Foreman, a note, and gave you a note which I had upon somebody else, and gave it to you as payment of my note, I must have given it as payment; you must have accepted it as payment to operate as an extinguishment of the debt.    In other words, it is a matter of contract, and like all other matters of contract, the two contracting minds must meet and concur— the one to give and transfer this other paper as payment,

and the party accepting it must accept it as payment of the
debt, in order to operate in law as an extinguishment, a
payment of the debt.    It is not necessary for me to go any
further upon that matter.    That's the law.    You apply the
facts.    You have heard the testimony.    It is for you to say
if this mortgage was taken by these parties who are charged
as being endorsers on these notes, whether they turned it
over to Mr. Evans as representative of the phosphate com-
pany, and if so, when they turned it over to him (if they
did turn it over to him), did they intend at the time, and
did he accept the mortgage at the time, both concurring in
the agreement, that it was to be received by him, and ac-
cepted as payment of these notes; or was it accepted and
received by him as a collateral, merely to secure the pay-
ment of the debt.    Now, if it was accepted as payment—
the defendant alleges payment, it is an affirmative defense—
in order to avail themselves of that defense they must sat-
isfy you by the preponderance of the evidence that that
mortgage was so turned over by the parties, the mortgagees,
with that intent, and so accepted by Mr. Evans as the rep-
resentative of the plaintiff with like intent as payment of
that debt.    If it was so accepted as full payment of these
notes, then there is nothing due upon them.    Now, whether
plaintiff has established that as a question of fact by the
preponderance of the evidence—which the plaintiff must do
in order for that plea to avail—that's a matter entirely for
you.    If, upon the other hand, you conclude that the mort-
gage was not accepted as payment of the debt, but as collat-
eral, then what obligation devolved upon plaintiff company?
If Mr. Evans represented it, then, as far as his authority to
accept as collateral payment was concerned, it was simply
to take and act in good faith, and use ordinary prudence
and discretion in collecting whatever was turned over to
him and applying it to the assets, if that was the agree-
ment, no more and no less.    So much for that.

I have been requested to charge you, under sec. 2462 of
the General Statutes, that there should have been an adver-

tisement of this property, and as there was no advertisement of the property by the plaintiff to sell it, that that as a matter of law released, as I understand, the plaintiffs from their legal liability upon these notes.   Counsel (interrupting the Court): You mean defendants.   The Court: I mean defendants—released the defendants from their liability upon these notes.   I charge you this, according to my view of the law, and I hope I shall make myself plain to you.   By way of illustration: if, Mr. Foreman, you were to give me a chattel mortgage, or a mortgage upon personal property, movable property, stock of goods, or horse, or anything like that, whenever that debt fell due, secured by that mortgage, the title in law vested in me, I could, without breach of the peace, go and take possession of it, and draw to the legal title the possession of the personal property, the law having invested me with title, I having procured possession without violating the law or disturbing the peace—the law says under the statute, it being a pledge for a debt, I in good faith must not appropriate your property; that wont do—that is giving too much power to the mortgagee; I must show my good faith by advertising that property, so as to bring about competition in bidding, that your property may sell for something like its value—advertise in three places or advertise in a newspaper, for the purpose of giving the public notice that there will be a sale of this property, and that your property may bring something like its value, in order that you may get the benefit of the value of the property by way of application to my debt.   But in all the cases cited by counsel, which I have not been able to look into, that rule applies where the mortgagee goes and takes possession and converts the property to his own use.   Now I am asked to apply that principle to this case.   Well, now, I cannot do that, from my view of the law; and why not? In the first place, there is no such plea set up here in the answer.   They do not plead that by virtue of violating the statute regulating such matters that they are released from their debt—they did not put the plaintiff on notice that

they were relying upon that to discharge their debt. But outside of that it is in evidence that the Farmers' Alliance Store made a deed of assignment, for whom? For the benefit of its creditors. Well, now, when they made that deed of assignment, if these parties who are endorsers upon these notes were interested in that store as directors or otherwise, and they, the Farmers' Alliance Store, selected Pierce as their assignee—if these parties were directors at that time—they selected Pierce as their representative, as their assignee, for what? To wind up the affairs of the concern of the Alliance Store and pay the debts; therefore, I cannot charge you that there has been such appropriation. In order for this principle of law to apply, as I understand it, it must be where a mortgagee goes and takes possession under his mortgage—takes it out of the possession of the mortgagor, takes exclusive control and possession of it, and intending to dispose of it—he must advertise it, and comply with this statute.

It is also set up in this answer that these defendants are released on account of plaintiff, the Phosphate Company, taking part, going into the meeting of the creditors, called under that deed of assignment. I cannot charge you that; and why not? Because there is not a word, as I understand it, or a provision under that deed of assignment that excludes any one from any participation in that—it could not do that; but it simply provides, as it should have done, for the settlement of the Alliance Store, the effects and assets, for the benefit of its general creditors, according to their legal priorities. In other words, any judgments, any mortgages, or any liens existing on the stock of goods at the time the deed of assignment was made, subject to those legal rights. It does not say that these parties who come in and accept must give a release and thereby discharge. I do not so understand it; therefore, I cannot charge you to that effect.

As to the application of the payments. Now, if you believe, from the evidence, that any money has been collected

by the plaintiff, the Phosphate Company, other than the $523.54; if you believe that $250 was collected outside of this $523.54, by the Phosphate Company, applicable to the debt of the Farmers' Alliance Store, then I charge you this as a matter of law: If you hold a note against me and also an account, and I pay you $100 or $200 upon it, just pay you generally, and do not at the time of the payment direct what application should be made of that money I am paying you, it is your privilege, if you exercise it at the time of the payment, to apply it to either. I have the right to say where it shall be applied, and if I, at the time of making the payment, instruct you to put it upon the note, and you put it on the account, because the account may not be as well secured, then you violate the law, because I instructed you to put it at a certain place. That's my province and privilege, and your duty is to put it where I instruct you. But in the absence of any instruction you have the right to put it upon either one of the debts you have against me. There is no question about that principle of law. If there has been $250 or any other sum collected by the Phosphate Company, the plaintiff, what application did they make of it, and what application should they have made of it? They should have paid it upon the existing debt against the parties here to this action, if it was paid out of the assets of the store. Now, whether they have done so or not, is a question of fact for you. If they paid it upon an existing debt other than these two notes— any other notes existing against the company—and it was the company's assets out of which they realized the money, and there was no direction at the time of payment as to how the payment should be applied, they had the right to apply it to that note, and not to the notes in suit; if there was direction, they should have followed the direction in making the application of payment.

I do not propose to detain you any further. As I have already stated to you, be guided by the law I have given you, which can be corrected if I am in error, you being the

sole judges of the facts of the case. If the plaintiff has established its right to recover judgment against the Farmers' Alliance Store and these several parties, as endorsers of these two notes, *except Walton*—if the plaintiff has established that legal right by the preponderance of the evidence, then what is your duty? You have no discretion; if that's your fair, impartial judgment upon the testimony, then your duty under the law to the plaintiff will be to write a verdict for the plaintiff. In that event your verdict should be: We find for the plaintiff the sum of so many dollars and cents, being the aggregate amount due on these two notes, with interest after the maturity of the notes, after allowing a credit of $523.54 as of date 11th May, 1895. Now, upon the other hand, if the plaintiff has failed to satisfy you by the preponderance of the evidence that it is entitled to judgment according to law, you being the sole judges of the testimony, or if the defendants have shown payment by the preponderance of the evidence, the greater weight of the evidence, by the transfer of that mortgage, then your verdict should be: We find for the defendants. So take the record and find your verdict.

Mr. Croft: There are three points I desire to call your Honor's attention to. First, as to the application of payments. Your Honor has said something with reference to this other note. I beg you to call special attention of the jury to this view of the case—the note signed by Steadman and Riley; it is in evidence $250 was applied to that. Now, I respectfully ask you to charge the jury, that if the jury find that the $250 paid came from this mortgaged property, that in that event it must go to the benefit of the persons who assigned that mortgage, and not to the Steadman and Riley note. The Court: Yes, if that be the fact, I so charge you. Mr. Croft: Another view is this: that, as a matter of evidence, if the jury find from any testimony—I refer particularly to Pierce—that, although Pierce may have been the assignee, if he did go ahead and sell those goods by direction of Evans, as representing the assignees of that

mortgage, that that would defeat the mortgage debt.    The Court: I have charged you to this effect: that in order for this to apply to defeat the rights of the plaintiff here, the defendants must show you that Pierce represented Evans alone, and not as assignee, in this matter, that he represented Evans alone, independently, and renounced his assigneeship as far as his action is concerned; in other words, he must be the representative of Evans alone.    I so charge you.

The jury retired and brought in a verdict as follows: "*We find for the plaintiff the sum of $4,767.36.*"

From this judgment the defendants appeal on the following exceptions:

I.  Because his Honor, the Circuit Judge, erred in overruling the defendants' objection and allowing the plaintiffs to introduce the certificate of the Secretary of State as the charter of the defendants' company.

II.  Because the Circuit Judge erred in not setting aside the verdict of the jury and granting a new trial, for it appears from the uncontradicted evidence that the defendant, W. T. Walton, did not endorse the note sued upon, and he should have been excluded by name in the finding of the jury.

III.  Because the presiding Judge, in his charge, instructed the jury as follows: "Now it appears here, and it is admitted, that since the commencement of this action, the plaintiff has received the sum of $523.54, for which amount the defendants are entitled to a credit on said note as of date 11th of May, 1895."    Such instruction was calculated to confuse and mislead the jury, and in addition thereto was a charge upon the facts of the case, for the defendants contended that a larger amount had been paid upon the note, and the precise issue was what amount had been paid on the notes, and that question should have been left to the jury to determine for themselves, without instruction as to the amount of such credit, and the presiding Judge erred in not so doing.

IV.  Because his Honor, the Circuit Judge, in charging

the jury upon the assignment of the mortgage mentioned in the answer, instructed them, "under the pleadings, one of the questions of fact to be submitted to you is: did these endorsers of these notes take a mortgage from the Farmers' Alliance Store? If you conclude they did, then did they assign and transfer that mortgage to the plaintiffs? Well, in order to show that, you must be satisfied that they assigned it and transferred it to the agent or attorney of the Farmers' (Columbia) Phosphate Company, that in transacting this business, accepting it, he was acting within the scope of his agency as attorney representing the plaintiff." It is respectfully submitted that such charge was calculated to confuse and mislead the jury, and that it did mislead the jury, for the proof shows that the mortgage was transferred directly to the plaintiffs, and it was error in the Circuit Judge to instruct the jury that, in order to find such transfer, they must be satisfied that the mortgage was transferred to the agent.

V. Because his Honor, the Circuit Judge, in charging the duty of the plaintiffs in collecting the mortgage which had been assigned to them, instructed them: "If Mr. Evans represented it" (the plaintiffs), "then, as far as his authority to accept as collateral payment was concerned, it was simply to take and act in good faith, and use ordinary prudence and discretion in collecting whatever was turned over to him, and applying it to the assets, if that was the agreement, no more and no less; so much for that." It is respectfully submitted that his Honor erred in such charge, for the duty of a mortgagee or the assignee of a mortgage in collecting the same is not measured by what the jury may consider prudent; but in collecting the mortgage he is bound to follow the method directed by the statute, under the penalty of satisfying the mortgage if he proceeds otherwise.

VI. Because the Circuit Judge erred in refusing to charge the defendants' request: "If the jury believe from the evidence that the defendant endorsers turned over to the plaintiffs the mortgage to them from the defendant corporation covering its stock of goods, and the plaintiffs afterward au-

thorized the mortgaged goods to be sold otherwise than the law directs or provided for in the mortgage, and that the mortgage did not authorize such sale in writing, then the plaintiffs have by such sale defeated the rights to collect the balance that may be due on said mortgage. After the amount received from the sale of the goods, and if the jury so find, then the plaintiffs have damaged the defendant endorsers to the amount due for such deficiency on the mortgage, and they would not under such circumstances be entitled to recover of the defendant endorsers."

VII. Because, whether or not the defendants had pleaded, they were released by the plaintiffs' illegal acts in foreclosing the chattel mortgage—the evidence showing that the plaintiffs had proceeded to foreclose the same, contrary to the method prescribed in the statute, had been admitted without objection, and such being the case, it was the duty of the Court to instruct the jury to find their verdict according to the facts proven.

VIII. Because his Honor, the Circuit Judge, erred in charging the jury, that if the defendants were directors of the Farmers' Alliance Store at the time Pierce was selected as assignee, they selected Pierce as their representative, and for that reason, the principle of law which discharges a mortgage debt if the mortgagee disposed of the mortgaged property otherwise than directed by the statute, did not apply; for, it is submitted, whether or not the defendants were directors of the defendant company, makes no difference. In neither case would Pierce be their representative, but he was the representative of the corporation, and not of its individual members.

IX. Because the Circuit Judge erred in charging the jury that the principle of law which discharges a chattel mortgage debt, does not apply except when the mortgagee takes exclusive control and possession of the chattels; for it is submitted that if the plaintiff directed Pierce, the assignee, how to dispose of the mortgaged property, and he followed such instructions, and did as the plaintiff directed, they are

24—47

liable for whatever forfeiture might arise from Pierce's illegal method of dealing with the mortgaged property.

X. Because the Circuit Judge erred in charging the jury that in order for the principle of law to apply, which would defeat the plaintiffs' right to recover on the notes, the defendants must show that Pierce renounced his assigneeship, and represented Mr. Evans (plaintiffs' attorney) alone; for it is respectfully submitted, if Pierce disposed of the goods as Mr. Evans directed, the plaintiffs are subject to the forfeiture for the failure of Pierce to observe the law, in disposing of the goods, whether or not he had renounced his assigneeship.

XI. Because the Circuit Judge erred in striking the juror Watkins from the panel, there being no legal objection to his competency to serve as a juror in the case.

*Messrs. Croft & Tillman*, for appellant, cite: *Setting Aside Verdict:* Proffate on Jury Trials, secs. 472, 474; 16 S. C., 14.   *Charge:* Con., sec. 26, art. 4; 16 S. C., 155, 591; *Sale Under Mortgage:* Rev. Stat., 2462; Jones on Chattel Mortgages, sec. 711; 1 Strob. Eq., 334; 15 R. I., 226, 231; 31 S. C., 168.   *Pleading:* Code, secs. 190, 191; 19 S. C., 334.

*Messrs. N. G. Evans* and *Sheppard Bros.*, contra, cite: *Charter:* Rev. Stat., chap. 49, art. 1, secs. 2352, 1519; 20 S. C., 156.   *Setting Aside Verdict:* 46 S. C.   *Excusing Juror:* 43 S. C., 91.

July 28, 1896.   The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER.   The plaintiffs brought this action to recover the amounts mentioned in two notes, bearing date the 2d March, 1894, the one payable on the 1st of November, 1894, and the other on the 1st of December, 1894, alleged to have been executed by the defendant corporation to the plaintiff company, and endorsed by the individuals, named as defendants, with said corporation. It appears that these individuals, on the 26th of November, 1894, took from the defendant corporation a mortgage on

the stock of goods then in the store houses of said corporation in the towns of Johnston and Mt. Willing, as well as all other goods which such corporation might thereafter acquire and put in said store houses, for the purpose of se-curing and indemnifying those individuals against any loss or damage by reason of their having endorsed the notes of said corporation.    It also appears that the defendant corporation, subsequently to wit: on the 26th of November, 1894, made an assignment of all its property to one Thomas R. Pearce, for the benefit of its creditors, providing that the said assignee should sell for cash all the stock of goods and chattels, and collect all choses in action, and out of the proceeds thereof should first pay the expenses of the as-signment, and next, pay all of the creditors of the corporation, according to their legal priorities; and if there should be any balance left after paying all such creditors, such balance should be turned over to said corporation.    This deed of assignment (a copy of which is set out in the "Case") does not, however, contain any provision that such creditors, as may accept the terms of the assignment, shall release the defendant corporation from any balance remaining unpaid out of the proceeds of the assignment.    After the commencement of this action, the mortgage above referred to was assigned to the plaintiff company, the precise date not being given in the "Case," except that it was some time in the year 1895.    Certain payments were admitted to have been made since the commencement of this action, which were allowed by plaintiff to be credited on the amount sued for to the amount of $523.54—the remainder of such payments having been credited on another demand held by plaintiff against defendant corporation not embraced in the present action.

The Circuit Judge having charged the jury, a verdict was rendered in the following form: "We find for the plaintiff the sum of $4,767.36;" and on the next day the defendants moved to set aside the verdict of the jury and for a new trial, "Because the verdict did not except the defendant,

W. T. Walton, from the finding," and this motion being overruled, judgment was duly entered on the verdict, from which judgment defendants appeal upon the eleven grounds set out in the record. These grounds of appeal, together with the charge of the Circuit Judge, will be incorporated in the report of this case.

The first and eleventh grounds, having been very properly abandoned upon the argument here, require no further notice. The second ground, which imputes error to the Circuit Judge in not granting a new trial because W. T. Walton was not excepted by name in the verdict, can be fully disposed of by a bare statement of what occurred at the trial. The "Case" shows that as soon as the complaint was read, one of the counsel for defendants said: "We have a demurrer here as to Walton," to which one of the counsel for plaintiff replied: "We desire to discontinue as to Walton. We do not ask for judgment against Walton." Thereupon an order was entered sustaining the demurrer as to Walton, and authorizing him to enter up judgment for his costs against the plaintiff. This was quite sufficient to discharge Walton from the case, to which he was no longer a party. Accordingly, the Circuit Judge, in his charge, expressly instructed the jury as follows: "You will consider this action dismissed as to the defendant, W. T. Walton. Your verdict cannot affect him one way or the other; and why? because he has demurred to the complaint, and that demurrer has been sustained, and he is practically out of this case." In the face of this, what necessity could there be for naming Walton in the verdict, is more than we can see. It would have been worse than useless to grant a new trial *as to Walton*, for that is the utmost that could have been demanded, when judgment had already been ordered in his favor by the order sustaining the demurrer. The second exception must be overruled.

The third ground of appeal is itself open to exception, inasmuch as it misrepresents (unintentionally, no doubt,) the instructions really given to the jury by a partial quo-

tation from such instructions.   Surely there was no error of law on the part of the Circuit Judge in instructing the jury to credit the amount of an *admitted* payment; especially in view of the fact, as shown by the charge, that the Judge proceeded to say that the defendants claimed a larger credit, which should, or should not, be allowed, according to the view which the jury might take of the testimony.   The third exception must be overruled.

The fourth exception is based upon a misconception of that portion of the charge therein referred to.   We do not understand that there was any controversy as to the fact that the mortgage was transferred to the plaintiff.   The only controversy was as to the effect of such transfer; the defendants contending that the mortgage was accepted *in payment* of the notes which constituted the basis of this action, while the plaintiff, on the other hand, contended that the mortgage was accepted merely as collateral security and not as payment; and it was in reference to this controversy, manifestly, that the Judge was speaking when he used the language excepted to.   It is too well settled to admit of dispute now, that an attorney at law has no authority to accept anything but money in payment of a claim sent to him for collection, unless he has authority from his client so to do (*Ludden & Bates Southern Music House* v. *Sumter*, 45 S. C.)   Hence, when any such claim is made, it is necessary to establish the authority of the attorney to accept something other than money in payment of a claim sent to him for collection.   The Circuit Judge, no doubt, had this well settled doctrine in mind when he made the remarks, which, it seems to us, have been misapprehended by appellants' counsel.   The fourth exception is overruled.

The fifth, sixth, ninth, and tenth exceptions, which were considered together by appellants' counsel, will be so considered by us, except to say that, in addition to the other objections, we find no evidence in the "Case" showing that any such request to charge, as consti-

tutes the basis of the sixth exception, was ever made by appellants. But, in addition to this, we find no evidence in the case upon which the point raised by these exceptions can be raised. They are based upon the erroneous assumption that the plaintiff, by its attorney, took possession of the mortgaged property, through the assignee, Pearce, and failed to dispose of the same as required by law. Now, as the undisputed facts are that the defendant corporation made an assignment of all its property to the said Pearce, *before* the mortgage was transferred to the plaintiff, and that Pearce took possession of the goods and proceeded to dispose of them as directed by the assignment, and that the mortgage debt was entitled to be first paid, after the expenses of the assignment, we see no occasion for the plaintiff, by its attorney or otherwise, to seize the goods *under the mortgage*, and there is no evidence that any such seizure was ever made. On the contrary, the evidence shows that the attorney for the plaintiff, when he acquired possession of the mortgage, finding the mortgaged property in the possession of the assignee under the deed of assignment, which, as we have said, provided that the proceeds should, after the expenses, be first applied to the mortgage debt, simply allowed the assignee to continue in possession, and to continue to dispose of the goods as directed by the assignment. While, therefore, the proposition of law, contended for by appellants, as to the duty of a mortgagee who takes possession of the mortgaged property, *under the mortgage*, may be sound, we are unable to perceive its application to this case. Besides, as we understand the Judge's charge, the jury were instructed in accordance with the proposition contended for by appellants, but at the same time were properly instructed, that such proposition had no application to this case, unless the jury came to the conclusion that the mortgaged property had been seized by the mortgagee *under the mortgage*. It is manifest, therefore, that there is no foundation for any of these exceptions.

The seventh exception being pointed only to *one* of the

reasons given by the Circuit Judge for the instructions given to the jury, and there being another reason quite sufficient to sustain the charge, it becomes immaterial to consider whether this particular reason is sound. The eighth exception may be disposed of by a similar remark.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.