LATIMER v. SOVEREIGN CAMP WOODMEN OF THE WORLD.

1. INSURANCE—PUBLIC POLICY.—A clause in a benefit certificate except-
   ing from the risk assured's death by his own "hand or act, whether
   sane or insane," is not void as against public policy or for want of
   mutuality.
2. IBID.—If a member of a beneficiary society holding a certificate pro-
   viding, "if the member holding this certificate * * * should die * * *
   by his own hand or act, whether sane or insane, or by the hands
   of the beneficiary or beneficiaries named herein, except by accident
   * * * this certificate shall be null and void"—take his own life,
   whether he is in such mental condition as to form an intention to
   take his own life, or to understand the effect or result of his act or
   not—the beneficiary cannot recover. *Divided Court.*
3. IBID.—PLEADINGS.—Defense to action on benefit certificate that in-
   sured came to his death by his own act, which avoids the certificate,
   must be pleaded by defendant and proved by preponderance of evi-
   dence.
4. DISCRETION.—Asking leading questions, and admitting irrelevant
   testimony, are within discretion of trial Judge.
5. REHEARING.—Hearing will not be ordered before Court *en banc*
   simply because this Court is equally divided.

Before ALDRICH, J., October term, 1900.    Affirmed.

Action on benefit certificate by Mrs. Marion E. Latimer
against Sovereign Camp Woodmen of the World.    From
judgment for defendant, plaintiff appeals.

*Messrs. Bonham & Watkins,* for appellant, cite: *On the
construction of the policy:* 57 S. W., 415; 35 L. R. Ann.,
258; 150 U. S., 1150; 137 U. S., 661; 47 N. Y., 52; 34
Wis., 389; 84 Penn. St., 385; 2 Dillon's C. C., 154; 87 Ky.,
541; 109 U. S., 880; 95 U. S., 232; 29 Fed. R., 198; 5 M.
& G. Eng. C. P. R., 639; 105 Ind., 212; 51 N. W., 202; 3 L.
R. A., 495. *Force and effect of circumstantial evidence
here:* 46 La. Ann., 1189. *Leading question:* 1 Green., 16
ed., sec. 434. *Charge on facts:* 47 S. C., 489; 48 S. C., 148;
57 S. C., 340; *State v. Cannon,* 49 S. C.; 56 S. C., 529, 398.

10—62

*Messrs. Tribble & Prince,* also for appellant. *Mr. Tribble* cites: *Definition of insanity:* Rap. & Law. Law Dic., p. 663. *On construction of policy:* 90 Mich., 177; 87 Ky., 541; Legal Med. by Fidy., p. 19; 4 Allen, 96; 102 Mass., 227; Taylor on Med. Jur., 12 ed., p. 788; 9 Blatch., 142; 15 Wall., 580; 35 L. R. A., 389; 17 L. R. A., 89; 70 Mo., 27; 120 U. S., 527; 30 L. J. N. S., ch. 511. *Suicide is not presumed, and burden is on defendant:* 4 Big. L. & A. Ins. R., 169; 35 Fed. R., 711; 16 U. S. C. C. A., 618. *What is suicide:* 86 Pa. St., 92; 48 Va., 335; 70 Mo., 27; 150 U. S., 468; 42 Md., 414; 109 U. S., 121; 39 Am. R., 660; 33 Am. St. R., 923; 19 Am. R., 623; 75 Wis., 116; 144 Mass., 572; 127 U. S., 661; 47 N. Y., 52; 31 N. W., 779; 90 Tenn., 291, 256. *Defendant must establish felonious suicide beyond reasonable doubt:* 16 S. C., 435; 24 Ency., 1st ed., 490; 1 Bing., 349; Steph. Dig. E., 98; 18 Ill., 228; 8 Blatchf., 589; 85 U. S., 908.

*Messrs. Quattlebaum & Cochran* and *H. C. Browne,* contra.

*Mr. Quattlebaum* cites: *As to construction of policy:* 13 Ency., 1 ed., 645; 65 N. Y., 232; 93 U. S., 284; 82 U. S., 236; 34 Wis., 389; 17 L. R. A., 89; 65 Mich., 199; 41 L. R. A., 587; 87 Ky., 541; 70 Mo., 27; 84 Cal., 570; 180 Pa., 205; 1 Mo. App., 334; 14 Ind. App., 611; 102 Pa., 230; 65 Mich., 199; 24 Fed. R., 159; 25 Fed. R., 315; 26 Hun., 187; 112 N. Y., 472; 14 Blatchf., 143; 57 P. R., 936; 56 N. E. R., 255; 41 L. R. A., 587. *Preponderance of evidence against presumption that suicide was not committed is on defendant:* May. Ins., 325; 87 Wis., 357; 11 App. D. & C., 417; 41 L. R. A., 589; 3 Jones & S., 314; 70 N. Y., 561; 26 Hun., 604; 35 L. R. A., 258.

*Mr. Cochran* cites: *As to construction of policy:* 17 L. R. A., 89; 127 U. S., 661; 1 Mo. App., 334; 14 Ind. App., 611; 84 Col., 570; 5 Northhampton Co. R., 30; 180 Pa., 205; 34 Wis., 389; 75 Ia., 346; 65 Mich., 199; 65 N. Y., 233.

*Mr. Browne* cites: *As to construction of policy:* 93 U. S., 284; 34 Wis., 289; 65 N. Y., 241; 39 N. W. R., 658; 24 Atl., 656; 31 N. W. R., 779; 24 Fed., 161; 43 N. E. R., 278; 127 U. S., 661; 51 N. W. R., 202. *Court should construe contract as written:* 93 U. S., 284; 57 Pa. R., 936; 75 Ia., 345; 65 Mich., 199; Joyce on Insurance, 3 vol., sec. 2635; 80 N. W., 1020; 57 N. W., 202; 79 N. W., 542; 139 Mo., 416; 56 N. E., 255.

The opinions were filed July 23, 1901, but remittitur held up on petition for rehearing before Court *en banc* until

November 29, 1901. The first opinion was delivered by

MR. JUSTICE JONES. This action was upon a benefit certificate issued by defendant in favor of plaintiff upon the life of her husband, who died while a member of said order in good standing. The defense was that the insured life, A. L. Latimer, came to his death by his own hand or act, which rendered the certificate void. The jury found for the defendant. The certificate contained this provision: "If the member holding this certificate * * * should die * * * by his own hand or act, whether sane or insane, or by the hands of the beneficiary or beneficiaries named herein, except by accident * * * this certificate shall be null and void, &c."

1. The first question presented by plaintiff's appeal is whether said provision is void, as against public policy and for want of mutuality. We think the provision is not invalid on either ground. The question is not whether an insane person ought to be held liable for his acts, but whether the death was one of the risks assumed by the insurer in the contract made with the insured when sane. We see no reason, on grounds of public policy, why the parties to an insurance contract may not stipulate what particular risk is assumed, or may not limit liability with respect to a specified hazard. *Bigelow* v. *Ins. Co.,* 93 U. S., 284.

148 LATIMER v. WOODMEN.

2. The next question is upon the construction of the policy. In response to defendant's request, the Court instructed the jury, "If you find from the evidence in this case that the assured, Arthur Lee Latimer, did die by his own hand or act, then, in that event, plaintiff cannot recover in this action," and the jury were further instructed in the language of defendant's request as follows: "It is entirely immaterial in this case whether Arthur Lee Latimer, the assured, was sane or insane at the time of his death; under the provisions of law and the benefit certificate sued upon in this case, if he died by his own hand or act, the defendant is absolved from liability. And the fact, if it be a fact, that he was insane at the time of his death would not operate to change the rule." In this connection we state that the Court refused the plaintiff's requests as follows: "In order to sustain the defendant's allegation that the policy of insurance was avoided by the deceased causing his death by his own hand or act, it is necessary for the defendant to convince the jury by a preponderance of the evidence * * * 2. That the killing was not the result of an accident, but was caused by the deceased's own act, and was intentional. 3. That if the deceased's death was caused by his own act, he understood at the time of self-destruction the physical nature of his act." Plaintiff's fifth request was also refused, which was as follows: "If the jury are convinced by a preponderance of the evidence that the deceased's death was caused by his own hand or act, but that he did not understand the physical nature of his act at the time, the defense fails, and the jury must find for the plaintiff." The plaintiff's sixth request was also refused, which was to the effect that such provision of the policy would not be infracted by the unintentional taking of his life by the insured.

We think the charge, especially when considered in the light of the requests which were refused, was erroneous and misleading. As we construe the policy, it would not be avoided by an accidental or unintentional death by the insured's own hand or act. Under the maxim, *noscuntur a*

*sociis,* the phrase, *"except by accident,"* qualifies the words, "die by his own hand or act, sane or insane." The word accident, when applied to human action, means something done without design or intention. It is, therefore, manifest that if the insured at the time of self-destruction was so insane as not to understand the physical nature and consequences of his act, he was incapable of intentional self-destruction, and death by one's own hand under such circumstances would fall under this class of accidents. But the jury were instructed that if the insured died by his own hand or act, it was entirely immaterial whether he was at the time sane or insane. This took from the jury a matter which they ought to have decided, viz: whether, if the insured was insane at the time of his death, his insanity was such as to negative an intention to take his own life. If against this view it be suggested that there was no evidence of such degree of insanity as to negative an intent to take his own life, and, therefore, no occasion to charge in reference to such degree of insanity, it is sufficient to say that the defendant offered evidence tending to show insanity, and that made it the duty of the jury to determine the degree of insanity under proper instruction, in order to ascertain whether if there was self-destruction it was intentional. It is argued for respondent that the language, "die by his own hand or act," as used by the Court in the charge to the jury, means intentional self-destruction, and that, therefore, the jury were properly instructed, within the meaning of the policy. But while such is the legal import of the words quoted, yet, in view of the whole charge, what was said and what was refused, we are convinced that the jury received the impression that the policy was avoided if the insured died by his own hand or act, whether intentional or not.

The authorities generally support the view that such a policy is not avoided by accidental or unintentional self-destruction; and that if the insured at the time of dying by his own hand was so insane as not to apprehend the physical nature and consequences of his act, such death would be pro-

tected by the policy.  I. May on Ins., 3d ed., p. 629; *Ins. Co.* v. *Terry,* 15 Wall, 580; *Ins. Co.* v. *Rodel,* 95 U. S., 232; *Bigelow* v. *Insurance Co.,* 93 U. S., 284.  In this last mentioned case the Court said: "Nothing can be clearer than that the words 'sane or insane' were introduced for the purpose of excepting from the operation of the policy any intended self-destruction, whether the assured was of sound mind or in a state of insanity."  In the case of *Streeter* v. *Western Ins. Co.,* 65 Mich., 199, 8 Am. St. Rep., the Court, considering a policy containing the words, "die by his own hand, sane or insane," said: "If a person does an act in a state of unconsciousness or involuntarily, whether he be sane or insane, such act is nothing more or less than accidental, and would not operate to forfeit the policy."  In the case of *Adkins* v. *Columbia Ins. Co.,* 70 Mo., 27, 35 Am. Rep., 410, construing a policy containing the words, "die by his own act and intention, whether sane or insane," said that the words, "by his own act and intention," were the equivalent of the words "by his own hand;" and approving the rule laid down in the case of *Bigelow* v. *Ins. Co., supra,* held that the provision embraced an intentional self-destruction by an insane man, provided he was conscious at the time of the physical nature and consequences of his act and intended to destroy his life, although he was not conscious of the moral quality or consequences of the act.  Other cases might be referred to, but these mentioned, with the cases therein cited, will be sufficient.  The contrary view is illustrative by the case of *Billings* v. *Ins. Co.,* 17 L. R. A., 89; but we are satisfied that the view we have taken is the better view in reason and accords with the weight of authority.

3.  The defense of intentional self-destruction to a policy providing a forfeiture for that cause is an affirmative defense, and the insurer seeking to avail thereof must specifically plead it and establish it by the preponderance of the evidence.  *Copeland* v. *Assurance Co.,* 43 S. C., 26.

Barring the objection to the charge already noticed, we think that the charge, considered as a whole, pro-

perly placed the burden of proof, and that the exception in this regard must be overruled.   In this connection appellant complains of the following charge: "Your verdict in this case must be based upon the evidence, and if there is credible evidence establishing the defense of suicide by preponderance of the evidence, and there is no evidence from which the fact of death by accident can reasonably be inferred, then you are not at liberty to suppose death resulted from accident." In reference to this matter the jury were also instructed: "The burden is upon the plaintiff to prove her case by the preponderance of evidence.   I charge you that if the deceased was a member in good standing of the Woodmen of the World, the death raises a *prima facie* case.   Now, the presumption is against suicide; but if it is established by the preponderance of the testimony, then the defendant has done all that it is required to; but if the testimony established the allegations of the answer, then your verdict should be for the defendant; but if the testimony in the whole case fails to establish the defense as set up by the defendant, then, of course, your verdict should be for the plaintiff."   The charge did not place upon plaintiff the burden of showing that the insured's death was not suicide or intentional self-destruction; nor was the charge in any sense a charge in respect to matters of fact as complained.

4.   The remaining exceptions proper to notice relate to the introduction of evidence.   The eleventh exception assigns error in permitting a leading question.   Such question must be generally left to the discretion of the Circuit Court.

The twelfth exception, in effect, complains that it was error to reject testimony on the ground of irrelevancy, because other irrelevant testimony had been allowed.   These exceptions must be overruled.

Under the views above stated, I think the judgment of the Circuit Court should be reversed and a new trial ordered; but inasmuch as the Court is equally divided upon this question, the judgment of the Circuit Court stands affirmed.

MR. JUSTICE POPE *concurs.*

MR. JUSTICE GARY *concurs in the dissenting opinion of the Chief Justice.*

MR. CHIEF JUSTICE McIVER *dissenting.* As I cannot concur in the conclusion reached by Mr. Justice Jones in this case, it is but right that I should state as briefly as practicable the grounds of my dissent. In the first place, it seems to me that, under the terms of the policy of insurance, upon which this action is based (called in the "Case" "Beneficiary Certificate," but which I shall call "Policy," for convenience), it is at least doubtful whether the defendant would be liable, if the assured died "by his own hand or act," even through accident, while insane. So much of the policy as relates to this matter, set out in full, reads as follows.: "If the member holding this certificate shall be convicted of felony, or shall be expelled from the order, or become so far intemperate, or use opiates, cocaine or chloral to such an extent as to impair his health or to produce delirium tremens, or shall die in consequence of a duel, or while engaged in war, or by his own hand or act, whether sane or insane, or by the hands of the beneficiary or beneficiaries named herein, except by accident, or by the hands of justice, or from a disease resulting from his own vicious, intemperate or immoral habits, or in consequence of the violation or attempted violation of the laws of the State or of the United States, or of any other province or nation, or if any of the statements or declarations in the application for membership and upon the faith of which this certificate was issued, shall be found in any respect untrue, this certificate shall be null and void and of no effect, and all moneys which shall have been paid, and all rights and benefits which may have accrued on account of this certificate, shall be absolutely forfeited without notice or service." This language very clearly shows that by the express terms of the policy which constitutes the contract upon which this action is based, it

was distinctly stipulated that if the assured should die from
any one of the causes specified, the policy would thereby be-
come null and void.    These causes are seven in number,
and are stated in the following order, viz: 1st.  Death in
consequence of a duel.    2d.  Death while engaged in war.
3d.  Death by the hand or act of the assured, whether sane
or insane.    4th.  Death by the hand of the beneficiary except
by accident.    5th.  Death by the hands of justice.    6th.
Death from a disease resulting from the assured's own vici-
ous, intemperate or immoral habits.    7th.  Death by reason
of the violation of any law of this State or any other nation-
ality.    It will be observed that there is no qualification or
exception annexed to any of these several causes of death
except the fourth, to wit: death by the hands of the benefici-
ary, to which the words "except by accident" are annexed,
and the question is, whether those words of exception can be
properly applied to any of the other specified causes of death.
They certainly could not properly be applied to either the
first or second causes of death—in consequence of a duel, or
while engaged in a war—as it would be absurd to make such
an application to either of those causes; then where is the
reason for applying those excepting words to the third cause
specified—death "by his own hand or act, whether sane or
insane"—for the same reason for applying these excepting
words to the third cause specified would require that they
should be applied to the first and second causes; and as that
would lead to an absurdity, it cannot be supposed that it was
the intention of the parties to the contract that the excepting
words should be applied to any of the causes of death except
the one (the fourth) to which such words were annexed.
It is not difficult to conceive of a reason for this.    It may be
the insurance company (the defendant in this case) was
willing to assume the risk of the death of the assured, if it
was *accidentally* caused by the act of the beneficiary, who
had a pecuniary interest in bringing about such death, but
was unwilling to assume such if the death of the assured was
caused by the act of the person who would be benefited

thereby, unless such death was the result of an accident; and, at the same time, it may be that the defendant was unwilling to assume the risk of the death of the assured by his own hand, even if the result of an accident; for if the assured should become insane, as he seems to have done, he would be much more liable to lose his life by accident than a person in full possession of his mental faculties.

But waiving this view of the matter, upon which I am not disposed to rest my conclusion in this case, and assuming, for the sake of argument, that the words "except by accident" apply to the third cause of death specified in the policy, as well as to the fourth cause, I propose to consider next the ground or grounds upon which the conclusion has been reached by Mr. Justice Jones, that the judgment of the Circuit Court should be reversed. These grounds seem, from the argument of counsel for appellant, to be regarded as two in number. 1st. That there was error in refusing to charge the jury that unless they believed that the assured *intentionally* took his own life, they could not find for the defendant. 2d. That if the assured was so insane as not to be able to understand the physical nature and consequences of his act, at the time he took his own life, the jury could not find for the defendant. It seems to me that neither of these grounds can be sustained without interpolating into the contract upon which the action was based, terms which are not to be found in such contract. There is not a word in the contract, as set out above, which warrants or implies, even, that the parties intended to qualify the term "insane," as used in that contract, so as to sustain either of the above stated grounds. Parties competent to contract may insert in their contracts any terms which they may see fit to do, provided such terms are not contrary to law or public policy, and Courts, in construing such contracts, must resort to the terms which the parties have employed to express their intention, without adding to or subtracting from such terms. Now in this case no question has been made or, so far as the testimony shows, could have been made as to the capacity of the as-

sured to contract at the time the contract of insurance was entered into; and as is well said by Mr. Justice Jones, in his opinion: "The question is, not whether an insane person ought to be held liable for his acts, but whether the death was one of the risks assumed by the insurer in the contract made with the insured when sane. We see no reason, on grounds of public policy, why the parties to an insurance contract may not stipulate what particular risk is assumed, or may not limit liability with respect to a specified hazard." Looking to the terms of this contract of insurance, it seems to me manifest that the parties stipulated in express terms that the defendant should not be liable if the assured died by his own hand or act, even though he was insane at the time. The Circuit Judge, therefore, was entirely right in instructing the jury that, if they found that the assured did die by his own hand or act, then the plaintiff could not recover, and it was entirely immaterial whether he was sane or insane at the time of his death, for such instruction was in exact accordance with the express stipulation of the parties to the contract.

It is contended, however, that if the assured, at the time he takes his own life, was insane to such a degree as would render him incapable of comprehending the physical nature and consequences of his act, and, therefore, incapable of forming an intention to take his own life, the exemption claimed by the insurance company could not apply. It seems to me that there are two insuperable objections to such a contention. 1st. That it would involve the necessity of adding other words to the language used by the parties to the contract. 2d. It would require an attempt on the part of the Court or the jury to measure the degrees of insanity—a very difficult if not an impossible task. For, first, the word used by the parties is the word "insane," and the proposition is that the parties did not mean what that word, according to its usual and common meaning, purports, but that they meant that, if the assured was so insane as to be incapable of understanding what he was doing, at the time he took his

life, the exemption claimed should not apply. Where is the authority for thus changing the meaning of a word, which has a well defined signification, from that which it generally, if not universally, bears, and thus radically change the terms of a contract expressed by the parties in plain and unmistakable language? It being conceded, as we have seen, that the defendant had a perfect right to limit its liability to certain specific risks, excluding certain other specified risks, was evidently unwilling to assume the risk of the assured dying by his own hand, even if he was insane at the time, it is impossible to conceive how such an intention could have been more explicitly and clearly expressed than by the terms used in this policy; and to incorporate in the contract other terms, to wit: that the assured must be so insane as not to be able to understand what he was doing, would, it seems to me, amount to *making* another contract for the parties, and not *construing* the contract which they have made, and expressed in clear and explicit language. 2. The contention would also involve the necessity of measuring the degree of the insanity of the assured, when the contract affords no standard by which such measurement is to be made.

These views are not without the support of authority. In *DeGogorza* v. *The Knickerbocker Life Ins. Co.,* 65 N. Y., 232, the policy contained a provision that it should be void if the assured "should die by his own hand, sane or insane"— a provision practically identical with that found in the case at bar—and the Court held that if the assured committed suicide, although at the time utterly *bereft of reason,* the insurance company would not be liable. In that case, the defendant asked that the jury be instructed that if the assured *in fact* came to his death by his own hand or act, the defendant is not liable, whether he was sane or insane at the time of his death. This request was refused, and, on the contrary, the jury were instructed, "that whether the assured was sane or insane, *if he intended* self-destruction, and the act of firing the pistol was his voluntary act *for the purpose* of ending his life, the plaintiff could not recover. He fur-

ther charged them, that if the act causing the death of the assured was the involuntary act of one incapable of exercising his will, then the company would be liable." In the opinion of the Court of Appeals, after a statement that "It is now to be regarded as the settled law of this country and of England, that a clause in a policy of life insurance exempting the insurer from liability if the assured 'die by his own hand' (without the additional words 'sane or insane'), has reference to an intelligent or voluntary act, and not to a suicide committed by a party in a state of mental derangement so great that the act of self-destruction is to be regarded as wholly involuntary" (citing a number of cases to that effect). The opinion then sets forth the fact, that in the case then under consideration (as in the case which this Court is now called upon to decide), the policy contained the following provision, which avoids the policy, "that if the assured 'shall die by his own hand or act, *sane or insane,'* the insurer shall not be liable," and then proceeds in the following language: "The question, therefore, is, whether the addition of the words 'sane or insane' is to be considered of any legal effect. If not, the instruction to the jury in this respect was correct, and the verdict (for the plaintiff) ought to be sustained; but if they are of any legal force, a different result must necessarily follow." It is thus apparent that the question, decided in that case, though expressed in different phraseology, is practically identical with that which this Court is now called upon to decide. The learned Judge who delivered the opinion of the majority of the Court in the case under comment, after stating that in the most of the cases considered by the Court, the additional words, "sane or insane," were not contained in the policy, proceeded to consider the proper construction and legal effect of such additional words, quoting from that great judge, Gibson, C. J., the rule as expressed in the following language: "The best construction is that which is made by viewing the subject of the contract as the mass of mankind would view it; for it may be safely assumed that such was the aspect in which the par-

ties themselves viewed it." And he concludes that it is not too much to say: "that a suicide, the result of a partial or total aberration of mind, would not, in the judgment of the great majority of mankind, be regarded as an accidental death." The learned Judge then concludes his discussion of this point in the following language: "So far, therefore, as we can be aided by judicial decisions, they appear favorable to views which are commended to our judgment. We do not, however, place reliance upon them further than they appear to be fortified by reason. We prefer to place our decision upon the ground that the words of the proviso in the policy before us by plain rules of interpretation, exempts the defendant from liability. That this language, in view of previous decisions, was inserted for such a purpose, cannot be doubted, and that it was agreed to both by the insured and the insurer, is not questioned, and that it is a provision allowed by law, no one denies. We are to say from these words what the parties must have intended, and we cannot properly say that additional words having no meaning were inserted in the contract; and if they mean anything, it is just what the words commonly import, and that is, if death ensues from any physical movement of the hand or body of the assured proceeding from a partial or total eclipse of the mind, the insurer may go free."

In *Billings* v. *Insurance Co.*, 17 L. R. A., 89, the policy contained a provision exempting the company from liability if the death of the assured resulted from suicide, sane or insane; and the question in the case was as to the effect of the additional words, "sane or insane," found in the policy. Taft, J., in delivering the opinion of the Court, after stating that such a clause has been before the Courts for construction, uses the following language: "The decisions generally are that a company is not liable if the assured designedly dies by his own hand—*i. e.*, if he commits the act intentionally, with knowledge of its consequence, although unconscious of its criminal character. This is as far as many of the Courts have been required to go upon the facts before

them, but the question has arisen in some instances as to the liability of the insurer in case the assured destroys himself in such an insane condition as to be incapable of understanding the physical nature and consequences of the act he was doing—did not know that by firing the pistol, hanging himself, or doing like acts, he would take his own life. That the insurer is liable in such cases is maintained apparently," in certain cases which he cites. He then proceeds as follows: "We think the contrary rule the better doctrine. The parties contracted, and the condition is expressed in terms not easily misunderstood. The words are: 'Nor will it (the policy) cover death or injury resulting from * * * suicide (sane or insane)' * * * If the insured (?) (insurer) can contract against hazardous occupations, residence within the tropics in July and August, death in a duel, by the hands of the law, in war, or when intoxicated, why can they not limit their liability in case of suicide, felonious or otherwise? It is our duty to construe the contract made by the parties, not to contract for them. The better construction to give a term or phrase in a contract is the one according to its ordinary and common meaning, as mankind would generally understand it. The defendant evidently was unwilling to incur the perils of insanity, and this clause limiting its liability was inserted for its protection. It was a valid contract. The defendant had the right to say that it would not hold itself responsible for the acts of the assured committed when insane; and the question is, can the Court, with such a contract before it, attempt to measure the degrees of insanity? The construction contended for by the plaintiff renders the words 'sane or insane' immaterial, surplusage, of no force whatever. They must have been inserted for some purpose. Felonious suicide was not alone in the contemplation of the parties to the contract. If it had been, there was no necessity of adding anything to the general words. The defendant says that, by force of them we are not to be liable in case the assured dies by suicide, 'sane or insane,' and the only answer is: 'It is true, the assured died by his own hand

when insane, but he was very insane—in fact, so insane that when he took his life he did not know what he was doing, nor the effect of his acts.' If we adopt this construction of the contract, we add to it an element not agreed to by the parties. If the death of the assured was caused in the manner and under the circumstances stated in the plaintiff's offer of evidence, the defendant is not liable. There was nothing in the evidence, nor offer of evidence, 'tending to show an accidental discharge of the pistol, nor that death resulted from anything save the pistol-shot fired by the assured.' We hold there can be no recovery, if the assured committed the fatal act, otherwise than accidentally; that the clause, 'suicide, sane or insane,' was intended to and does include self-destruction, irrespective of the assured's mental condition at the time of the act which caused his death. This is the better rule, in that it gives effect to the contract made by the parties, and the logical conclusion of the better considered cases"—citing the cases. This seems also to be the opinion of Mr. Justice Harlan; for in construing a policy, in the case of *Travelers Ins. Co.* v. *McConkey,* 127 U. S., 661, containing the following provision: "No claim shall be made under this policy when the death or injury may have been caused by duelling * * * or by suicide (felonious or otherwise, sane or insane)," he used the following language: "No valid claim can be made under the policy, if the insured, either *intentionally* or *when insane* (italics mine), inflicted upon himself the injuries which caused his death."

I propose to consider next the cases cited by Mr. Justice Jones to sustain the conclusion which he reaches as to the question I have been considering. The first of these cases is *Insurance Co.* v. *Terry,* 15 Wall., 580. That case is clearly inapplicable to the present case, for the policy in that case contained these words: "If the said person whose life is hereby insured shall die by his own hand, this policy shall be null and void;" and did not contain the additional words, "sane or insane," upon which the question turns in the present case. That case, therefore, clearly belongs to that class

of cases, the effect of which was intended to be avoided, by the insertion of the additional words, "sane or insane;" and hence neither the decision in that case nor anything said therein can have any proper application to the present case, in which the Court is called upon to construe a contract expressed in radically different terms from those used in the contract construed in that case.

So, also, in the next case cited, *Insurance Company* v. *Rodel,* 95 U. S., 232, the policy to be construed contained only the words, "that in case the said Emil G. Rodel should die by his own hand (without the additional words, 'sane or insane'), the policy should be void;" and hence neither the decision in that case nor the remarks found in the opinion have any application to the question here under consideration.

In the next case cited, *Bigelow* v. *Berkshire Life Ins. Co.,* 93 U. S., 284, the action was on two policies issued by the defendant on the life of Bigelow, each of which contained a provision rendering the policies void if the assured should die by suicide, sane or insane. The defendant pleaded that Bigelow died from the effects of a pistol wound inflicted upon his person by his own hand, "and that he intended by this means to destroy his life." To this the plaintiff replied that Bigelow, at the time when he inflicted the pistol-wound upon his person by his own hand, was of unsound mind, and wholly unconscious of the act. A demurrer to this replication was sustained by the Court below, and such action was affirmed by the Supreme Court of the United States. It seems to me very clear that the case affords no support whatever for the contention of the appellant in this case. Here the question is whether it is necessary that the jury should be satisfied that the assured, though insane to a certain degree, *intended* to take his own life, when he fired the fatal shot or, what amounted, practically, to the same thing, had sufficient intelligence to understand the physical character and consequences of the act which he did, before they would be justified in finding a verdict for the defendant. It seems

11—62

to me obvious that no such question arose or could have
arisen in the Bigelow case, *supra,* for the reason that the
defendant in that case, by its plea, practically admitted that
an intentional self-destruction was necessary to exempt it
from liability.    The defendant not only pleaded that Bige-
low took his own life, but that he did so *intending* to destroy
his own life.    The language of the plea, "that Bigelow died
from the effects of a pistol wound inflicted upon his person by
his own hand, and that he *intended* by this means to destroy
his life" (italics mine), can mean nothing else, and com-
pletely eliminated the question of intention from that case.
I am at a loss, therefore, to conceive how the Bigelow case
lends any support whatever to the position contended for by
appellant in the case at bar.

The next case cited is *Streeter* v. *Western Ins. Co.,* 65
Mich., 199, reported, also, in 8 Am. St. Rep., 882.    While it
is true that the first paragraph of the syllabus in that case
does seem to support the contention of appellant in this case,
I think a careful examination of the opinion of the Court will
show that the decision of the Court is not correctly repre-
sented in such syllabus.    The policy contained the following
clause: "If the insured shall * * * within three years of
the date of this policy die by his own hand, sane or insane,
* * * this policy shall become and be null and void."    The
Court below construed this langnage as "covering all acts of
self-destruction, whether felonious or not, and was meant to
excuse the company from liability when the suicide was the
result of insanity and in itself an insane act; that the words
'sane or insane' in this case, not only meant to qualify the
meaning of 'die by his own hand,' as defined by law, but that
they actually do so."    And the Supreme Court held that,
under the facts presented by the record, the charge of the
trial Judge was correct, and the judgment below for the de-
fendant was affirmed.    Not only so, but in that case counsel
for plaintiff contends that the phrase "die by his own hand,"
had a well understood signification in the law of insurance,
namely, as meaning "shall voluntarily and intentionally take

his own life," and that, by adding the worde "sane or insane," the defendant had not caused the expression, "die by his own hand," to mean something which it did not mean without such addition; but had used a defined expression which was tantamount to saying, "shall voluntarily and intentionally take his own life, sane or insane." But the Supreme Court said: "We are unable to agree with the construction which the learned counsel for the plaintiff places upon the clause of the contract in question." It would seem, therefore, that the case rather conflicts with than supports the proposition which it is cited to sustain.

The last case cited, *Adkins* v. *Columbia Life Ins. Co.,* 70 Mo., 27, reported, also, in 35 Am. Rep., 410, does not sustain the conclusion reached in the leading opinion in the present case; for in that case the language of the policy, under which exemption was claimed for the defendant, differs very materially from that found in the policy which this Court is now called upon to construe, and the difference is as to the very point upon which I take issue with Mr. Justice Jones, to wit: whether the act of self-destruction must be *intentional*—that is to say, that the assured, though insane at the time, must have sufficient intelligence to enable him to understand the physical nature and consequences of the act by which he takes his own life, in order to enable the insurance company to claim exemption from liability. For in *Adkins* v. *Columbia Ins. Co.,* the language of the clause in the policy under which exemption was claimed was: "That in case of the death of said insured by his own act *and intention* (italics mine), whether sane or insane, * * * the company shall not be liable for the sum insured by said policy," &c.; whereas, the language used in the policy now under consideration is that: "if the member holding this certificate (the assured) * * * should die * * * by his own hand or act, whether sane or insane, * * * this certificate shall be null and void," &c., with not a word as to the *intention.* It is manifest, therefore, that the case cited is not applicable.

It seems to me, from this review of the cases cited to sus-

tain the conclusion from which I dissent, that none of them sustain such conclusion.    It is true that there are expressions used in several of these cases which do tend to support the conclusion reached in the leading opinion; but, as I understand it, the rule is universally acknowledged that a case is only authority *upon the point decided,* and that expressions used or views thrown out *arguendo* are never regarded as authority in a subsequent case, and that especially is this so where the facts are different, and that where expressions are used or views are advanced in discussing the proper construction of a contract couched in certain language, any attempt to apply such expressions or views to the construction of a contract couched in different language, is much more apt to be harmful than helpful.

There is, however, another ground upon which I think the judgment appealed from should be affirmed.    The rule is well settled that the refusal to charge even correct propositions of law, where there is not testimony in the case to sustain such propositions, will not constitute reversible error (*Columbia Phosphate Co.* v. *Farmers Alliance Store,* 47 S. C., 358), and this for the very obvious reason that where the Circuit Judge erroneously refuses to charge a given proposition of law, which is not sustained by or does not grow out of any testimony in the case, the error (if error at all) is purely speculative, and is, therefore, harmless, and for that reason does not constitute reversible error.    Now in this case, after a very careful examination, I have been unable to find any testimony tending to show that the assured, when he fired the pistol by which his life was taken, was insane to such a degree as to render him incapable of forming an *intention* to take his own life, or that he was not capable of understanding the physical nature and consequences of his act.    On the contrary, the testimony tends to show the very reverse—that he took his own life in pursuance of a previously formed intention to take his own life, which was, if not expressed, certainly intimated to his own wife, and which was apprehended as well by her as the friends

and associates of the assured. Hence, even if it could be properly held (as I do not think it can be) that the jury could not find a verdict for the defendant, unless they were satisfied by the preponderance of the evidence that the assured took his own life intentionally, or that he understood the physical nature and consequences of his act in firing the pistol, I do not think there was any reversible error, because there was no testimony tending to show that the assured was so insane at the time as to be incapable of forming an intention to take his own life, or was unable to understand the physical nature and consequences of his act.

I am, therefore, of opinion that the judgment of the Circuit Court should be affirmed.

November 29, 1901. PER CURIAM. This is a petition for a rehearing by the Court *en banc,* based solely upon the ground that the Court was equally divided upon the original hearing in this Court. Inasmuch as this Court has held in two cases, to wit: *Florence* v. *Brown,* 49 S. C., 332, and *Newton* v. *Woodley,* 55 S. C., 132, that such a ground is not sufficient, from which holding this Court is not disposed to depart, the petition must be dismissed.

It is, therefore, ordered, that the petition be dismissed, and that the stay of the remittitur heretofore granted be revoked.