14794

CRAIG v. CLEARWATER MFG. CO

(200 S. E., 765)

*Messrs. Bussey & Fulcher* and *Hendersons & Salley,* for appellant,

*Messrs. Williams & Busbee,* for respondent,

December 28, 1938.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

On the night of October 2, 1936, Theodore G. Craig, an estimable young man, lost his life in a collision between the automobile in which he was driving and three trucks, on State Highway No. 1 in Aiken County. This action is brought under Lord Campbell's Act by his widow for the benefit of herself and children.

The circumstances attending the tragedy depict a most deplorable state of negligence on the part of some person or persons, and the pertinent question is, who is liable?

The complaint alleges that the trucks which collided with the car which Theodore G. Craig was driving, and which trucks were driven negligently and recklessly, were the property of Clearwater Manufacturing Company and the drivers of the trucks at the time of the collision were the agents or employees of the said Clearwater Manufacturing Company, and "were then acting in the scope of their duties as such."

The principal line of defense was a denial that the trucks involved in the unfortunate occurrence were the property of the defendant, and the further denial that the drivers of the trucks were the agents or employees of the defendant.

Under the pleadings, the plaintiff, in order to recover, was bound to show that the trucks alleged to have caused the accident were the property of the defendant; were driven by the agents or employees of the defendant, who were then engaged within the scope of their duties as such.

The plaintiff offered testimony to show that the trucks bore the plates of the State Highway Department, issued in the name of the Clearwater Manufacturing Company, which licensed the trucks to operate in this State. The defendant offered testimony to show that the trucks involved in this accident were the property of Max Efron, who procured them to be licensed by the State Highway Department in the name of Clearwater Manufacturing Company without the knowledge, consent or authority of said Manufacturing Company. It was testified for plaintiff that Afron did not pay the city taxes on the trucks and when called upon by the city tax collector, he said the trucks were the property of the Clearwater Manufacturing Company. An officer of the company in the City of Aiken sent the tax collector to the mill of the company at Clearwater, fifteen miles away from Aiken; here he showed the execution to an unidentified person, who said he would enquire into it and send the matter to the New York office; thereafter, the taxes were paid by Efron. It appears that the Clearwater Manufacturing Company owned no property subject to taxation in the City of Aiken. The officers of the Clearwater Manufacturing Company all testify that they knew nothing of the action of Efron in having his trucks licensed in the name of the Clearwater Manufacturing Company, until after this action was begun. There is evidence that Efron is an independent contractor as a hauler of freight on the highways; that he has a written contract with Cohn, Hall & Marx of New York, who purchase the unfinished cotton cloth of various mills

and send it to finishing mills, of the character of this defendant, to be finished; that on the day in question Cohn, Hall & Marx had directed Efron to go to mills in Easley and Spartanburg and get cloth and take it to Clearwater Manufacturing Company. This he did and the trucks were returning to Aiken when the collision occurred.

Much stress has been laid upon the plea of the defendant that these trucks were the property of Max Efron; that he had a written contract with Cohn, Hall & Marx to haul the cloth which they purchased from the places of manufacture to the finishing mills. There is evidence that the trucks are the property of Max Efron and that the drivers are in the regular employ of Efron and paid weekly by him.

Was there sufficient testimony to require the Court to submit to the jury the question, viz.: was the Clearwater Manufacturing Company the owner of the trucks involved; were the drivers of the trucks the agents or employees of the said manufacturing company; were they engaged about the business of the said company within the scope of their employment?

Certainly no one has testified for the plaintiff that these trucks were the property of the defendant; a number have testified to the contrary. It is true that Mr. Busbee, the Aiken Tax Collector, said that when he called upon Efron for payment of the taxes on the trucks, Efron said they were the property of the defendant, but Efron was not an officer of the company and had no authority to speak for it.

This is a brief synopsis of the testimony relating to the question of the title to the trucks, and the employment of the drivers.

At the conclusion of the testimony, the defendant moved for a directed verdict on the grounds that the evidence was insufficient to show that the trucks were owned by the defendant, or to show that the trucks were operated by the defendant or its agents or servants, acting as such; that the only reasonable inference to be drawn from the testimony

is that the trucks were owned and operated by Efron Trucking Company, an independent contractor, and were not acting as agents or employees of the Clearwater Manufacturing Company, but for another company.

In denying the motion, the trial Judge said: " * * * I am going to let this case go to the jury. On the question of independent contractor this witness, Efron, was not a contract hauler under the law. He had no right under the law to engage in hauling by motor vehicle for anybody. He had not complied with Section 8505 (8525) of the Code, and beginning with Section 8507, or any of the provisions of that chapter. There is certainly no evidence by the defendant that he was a contractor and authorized by law to engage in hauling by motor vehicle on the public highways of the State."

His Honor laid undue stress on the question whether Efron was an independent contractor. In our judgment, that was, at that point of the case, an immaterial issue, if, indeed, it ever became a major issue. The matter then before the Court was whether the plaintiff had produced sufficient evidence to go to the jury on the question whether the trucks involved in the collision were the property of the defendant, and were then operated by its agents or servants and engaged in its business within the scope of their duties.

In our opinion, it is wholly immaterial whether Efron had complied with the statutes of the State regulating the conduct of those desiring to become haulers of freight by truck on the public highways of the State. He may have been in open violation of the law. The question is: Did the trucks belong to the Clearwater Manufacturing Company? Were the drivers of the trucks then employed by the defendant company, and were they then engaged in its business? If they were employed by Efron and were then engaged in his business, certainly the derelictions of Efron and his agents and servants cannot be charged to defendant.

We can find in the record no direct evidence that these trucks were the property of the Clearwater Manufacturing Company, nor can we find such evidence that they were engaged then in the service of the said company, or that the drivers thereof were the servants or employees of the said company.

We have given painstaking study to and consideration of this evidence. The record is unusually long, but we have read it more than once with solicitous care. Our confirmed opinion is that the only reasonable deduction to be made from all the evidence is that the trucks were the property of Max Efron; that they were, on the night of this collision, returning from the Clearwater Mill where they had been to deliver cloth which they had brought from mills at Easley and Spartanburg; that this had been done by the direction of Cohn, Hall & Marx given to Max Efron, and under contract with said Cohn, Hall & Marx.

Our analysis of the testimony of plaintiff, in support of its allegations that the trucks were the property of the Clearwater Manufacturing Company; that at the time of the collision they were engaged in its business, and operated by its agents or servants, is:

That the trucks bore the license plates of the State Highway Department issued in the name of Clearwater Manufacturing Company, and the testimony of Mr. Busbee as to what Efron said thereabout in connection with the Aiken city taxes and the examination and cross examination. As we understand, the plaintiff contends that these facts lead to the presumption that the trucks were the property of defendant, and that leads to the presumption that the drivers of these trucks, being found in the possession and operation of plaintiff's property, are presumed to be the agents of the owner thereof. We do not think this may legally be done.

The first proposition is true to the extent of saying that when the license plates of the State Highway Department were found on the trucks in the name of Clearwater Man-

ufacturing Company, the presumption arose that they were the property of that company. But that is far from saying that that proved that they were its property.

The following extract from 10 R. C. L., 870, Sec. 13, is singularly apt, in considering the question involved in our case: "It is a well-established rule that a presumption can be legally indulged only when the facts from which the presumption arises are proved by direct evidence, and that one presumption cannot be deduced from another. To hold that a fact inferred or presumed at once becomes an established fact, for the purpose of serving as a base for a further inference or presumption, would be to spin out the chain or presumptions into the regions of the barest conjecture. * * * In an action for damages by the administrator of a deceased person who was killed while driving a team over a railway crossing, where there is no testimony showing what the deceased did immediately before and at the time he went upon the crossing, it is presumed that he was in the exercise of proper care and that before going upon the crossing he both looked and listened for the approaching train, and from this presumption the jury may so find; but in the absence of any testimony showing what happened the jury are not warranted in assuming, in order to account for his going upon the crossing, that his team became frightened and that he lost control of them."

So, in the present case, even if the plaintiff were justified in presuming that the trucks were the property of Clearwater Manufacturing Company because they bore the license plates of the State Highway Department in that name, she would not be justified in presuming that the drivers of the trucks were the agents and servants of the said company, and were engaged in its business and so engaged within the scope of their duty. This would be piling the presumption of Pelion upon the presumption of Ossa.

In the case of *New York Life Insurance Company v. Gamer,* 303 U. S., 161, 58 S. Ct., 500, 82 L. Ed., 726, 114 A. L. R., 1218, in an opinion filed February 14, 1938, Mr.

Justice Butler delivered the opinion of the Court; Mr. Justice Black dissenting. The action was to recover double indemnity on an insurance policy. The cardinal issue involved was whether the policy insured "from bodily injury effected solely through external, violent, and accidental means." (Page 501.)

The defense was that the deceased committed suicide.

The Court said: "Upon the fact of violent death without more, the presumption, *i. e.,* the applicable rule of law, required the inference of death by accident rather than by suicide. As the case stood on the pleadings, the law required judgment for plaintiff. * * * It was not submitted on pleadings but on pleadings and proof. * * * The evidence being sufficient to sustain a finding that the death was not due to accident, there was no foundation of fact for the application of the presumption; and the case stood for decision by the jury upon the evidence unaffected by the rule that from the fact of violent death, there being nothing to show the contrary, accidental death will be presumed. *The presumption is not evidence and may not be given weight as evidence."* (Italics added.) Citing authorities, both from Federal and State Courts.

It is true that this case is not binding on us, but its reasoning and logic are appealing.

Counsel for plaintiff quote and rely upon the case of *Ingram v. Davis,* 131 S. C., 326, 125 S. E., 920, as being authority in refutation of the rule laid down in the authorities above cited. We do not so construe the findings in that case. Plaintiff sued for the loss of a mule shipped on a bill of lading which showed the shipment of twenty mules and five horses, and the delivery at the destination of only 19 mules and five horses. The opinion says (page 921) : "The failure to deliver part of the single shipment was a probative fact which raised the presumption of negligent loss by the defendant, the delivering carrier. * * * *That presumption was reinforced by the way-bill and the freight and expense bill which contained entries and notations clearly susceptible*

*of the inference that the missing mule had been received and handled by the defendant. Admitting that the testimony of defendant's witnesses, if believed, would conclusively rebut the presumption of loss by the terminal carrier, we are of the opinion that the issue here made was for the jury. \* \* \*"* (Italics added.)

We think this decision was right. There was sharp and contradictory evidence entirely independent of the presumption. But that case is not authority here. There is here no such sharp and contradictory testimony bearing upon the fundamental allegations of the complaint that the trucks were the property of Clearwater Manufacturing Company; that they were being used in the business of the company by its agents and servants in the scope of their duties.

The case of *Moseley v. Southern Ry. Co.,* 164 S. C., 193, 162 S. E., 94, 96, is illuminating on the point we are discussing. The body of Moseley was found under a high trestle; there were no eye witnesses and all the evidence was circumstantial. There was a large verdict for plaintiff. This Court, reversing the judgment, said, *inter alia* (page 97):

"To sustain the theory of plaintiff, the jury were compelled to presume from the finding of the body in the cut and the disabled automobile three-quarters of a mile away, that the deceased walked from the car, through the Town of Cayce out onto the pathway and tripped over the abutment.

"This presumption, however, would have to rest upon several other presumptions, contrary to settled rules of evidence. It would have to be presumed: (1) That at some time that night the deceased was in his automobile at the point where it was found; (2) that, if he were alive at his automobile, he left it and went directly to the pathway on the railroad and did not go into Cayce, \* \* \*; (3) that he chose a perilous route over a railroad embankment and trestle, in the nighttime to seek assistance rather than the safer nearby sources of possible help \* \* \*; (4) that, in view of his wounds, nothing occurred to him in the

Town of Cayce before he got on the fill; (5) and, finally, that he was at some time of the night on the fill or trestle."

From the same case: " * * * If there is any testimony tending to support the material allegations of the complaint, a nonsuit or direct verdict should not be granted. But, even the scintilla doctrine of evidence rests upon proven facts."

In our present case there are no *proven facts* to sustain the allegation of the complaint that the trucks were the property of the defendant, and the drivers thereof were its agents or servants. Only presumptions built upon other presumptions.

The question of the effect and force of a presumption as evidence is thus treated in the case of *Baker v. Western Union Telegraph Co.*, 87 S. C., 174, 69 S. E., 151: "When any fact raises a presumption of negligence, the general rule is that such fact itself stands as evidence of negligence throughout the trial, to be weighed by the jury, along with the rebutting evidence of the defendant, in deciding whether the preponderance on the issue of negligence is on the side of the plaintiff or of the defendant; and it follows that, when this general rule is applicable, the court cannot adjudge that there is no evidence of negligence, and on that ground grant a nonsuit or direct a verdict in favor of the defendant." (Citing cases.)

There follows from the same opinion the following ultimate conclusion, which is applicable to the case we are passing upon: " * * * The general rule is not, however, always applicable; for the evidence offered by the defendant may explain so clearly the act on which the presumption of negligence rests, and show due care so plainly and indisputably that the presumption originally created would be completely destroyed. * * *"

That is just what occurred in the case on appeal. The plaintiff presumed that the trucks involved in this collision were the property of Clearwater Manufacturing Company because they bore the license plates of the State Highway

Department issued in the name of the said company. The evidence offered by the defendant, in our judgment, "so plainly and indisputably" explains how and why these license plates were on the trucks as to destroy the presumption; and with that presumption destroyed, the presumption that the drivers of the trucks were the agents or servants of the defendant is likewise destroyed. The opinion continues in these words: " * * * When no reasonable man could fail to come to the conclusion that the presumption had been so destroyed, and there is no other evidence of negligence, then it would not only be within the power of the court, but its duty, to order a nonsuit or direct a verdict for the defendant."

Without the presumption created by the presence on the trucks of the license plates of the highway department issued in the name of Clearwater Manufacturing Company, there is no evidence of any weight to prove ownership of the trucks in the defendant. This the plaintiff was bound to prove by the preponderance of the evidence, or else fail in the action.

We cannot escape the conviction that she has so failed, and that the trial Judge should have directed a verdict for the defendant.

This conclusion renders it unnecessary to consider the other issues and exceptions.

This is a tragic case which appeals with exceptional poignancy to the sympathy of the Court. But the Court may not let its sympathy for the wife and children of the worthy man who lost his life in the collision override its honest opinion of the applicable law after conscientious study and consideration of the law and the facts. It must, therefore, reverse the judgment and direct the entry of judgment for the defendant. This decision is not to be understood to preclude the plaintiff from pressing such other action as she may be advised.

The judgment is reversed, and the case is remanded to enter judgment for the defendant.

Mr. Chief Justice Stabler and Messrs. Justices Baker and Fishburne concur.

Mr. Justice Carter did not participate on account of illness.