## RAST v. MUTUAL LIFE INS. CO. OF NEW YORK.
### No. 4604.

Circuit Court of Appeals, Fourth Circuit.
June 10, 1940.

Edward W. Mullins, of Columbia, S. C. (Hunter & Harley, of Newberry, S. C., and Nelson, Mullins & Grier, of Columbia, S. C., on the brief), for appellant.

Pinckney L. Cain, of Columbia, S. C. (Louis W. Dawson, of New York City, and Thomas, Cain & Black, of Columbia, S. C., on the brief), for appellee.

Before SOPER, DOBIE, and NORTH-COTT, Circuit Judges.

SOPER, Circuit Judge.

The plaintiff in the District Court, who is appellant here, brought suit against the Insurance Company as the beneficiary under two policies of insurance of $5,000

each on the life of her deceased husband. She seeks to recover the additional sum of $5,000 under a clause in each policy providing for payment of double indemnity "upon receipt of due proof that the insured died as a direct result of bodily injury affected solely through external, violent and accidental means, * * * provided that the double indemnity shall not be payable if death resulted from self destruction, whether sane or insane". The insured died as the result of a gun shot wound, and the company paid the face of the policies but denied liability for double indemnity. The sole question in the case was whether the death was accidental or suicidal, the plaintiff alleging that the defendant had been furnished with due proof of accidental death, and the defendant taking issue on this point and alleging that death resulted from self destruction.

On the day of his death, September 30, 1937, the deceased had busied himself about his home in the town of Swansea, South Carolina, during the morning. After lunch, at about 1.15 P. M., he left his home in apparently good spirits, saying he was going to his farm which was located two and a half miles from town. He took a shot gun with him saying that he would try to get a rabbit. He went to the farm and had some conversation with his tenant, and then about 1.30 P. M. went into the woods for a few minutes for a rabbit, firing one shot unsuccessfully. Returning he arranged for the farmer to get a few stalks of sugar cane for his children and left.

Shortly after 1:30 P. M. he was found about a half mile away, lying on the ground by the side of his automobile which was parked in the yard of an abandoned house on the farm. The spot was in plain view from the public road, and he was discovered by the occupants of a passing automobile who saw his car and heard him call for help. One of them heard a gun shot when their car, as it approached the spot, was about 300 yards away. He was in great pain from a gunshot wound in the upper abdomen and died later in the day. He was lying on the ground at a slight angle to the car with his feet at the center and his head toward the rear of the car. The barrel of the shotgun was protruding about 18 inches from the back door, while the stock of the gun rested on the floor of the car between the front and the back seats. He asked the passers-by to help him, telling them that he had shot himself

accidentally while attempting to pull the gun out of the car by the barrel. This statement, however, was not allowed to go to the jury as the court held that it was not part of the res gestae. We shall discuss this ruling later. Suffice it to say now that the evidence shows very clearly that the statement was made by the deceased a few minutes at the most after he was shot.

The Insurance Company contended in the District Court and contends here that the evidence in the case was not only insufficient to prove an accidental death, but actually demonstrated suicide. This position was based in part upon evidence relating to the mechanical structure of the gun and in part upon circumstances which suggested a motive for self destruction. An expert in fire arms testified for the defendant that as the gun was equipped with a safety device, it could not be discharged accidentally. In addition there was weighty evidence to show that the deceased was in bad financial condition, without income or earning capacity; that he had forged his wife's name to the assignment of a mortgage which was in default when he died, and there was danger that his crime would shortly be discovered. Other insurance policies on his life for substantial sums were outstanding which would have lapsed on the day following his death unless the premiums were paid. The insured had no money in bank and had issued four checks which were dishonored for insufficient funds. The inventory of his estate filed by the beneficiary as executrix disclosed that the insured had left no cash on hand or in bank. On the other hand, a fire arm expert produced by the plaintiff gave evidence which had some tendency to show that the gun could have been accidentally discharged; and the insured's wife, who was the beneficiary named in the policy, testified that at the time of his death the insured had approximately $480 in his home. The defendant, at the conclusion of all the evidence, made a motion for a directed verdict in its behalf on the ground that the only reasonable inference that could be drawn from the evidence was that the death of the insured was not accidental. This motion was overruled and the case was submitted to the jury which found a verdict for the defendant.

■ It is manifest from this recital that the District Judge was correct in submitting the case to the jury. While the evidence furnished ample support for the ver-

dict of suicide, it cannot be said that no inference other than suicide could be drawn from the facts laid before the jury. The plaintiff contends on this appeal that the judgment of the District Court should be reversed, because of erroneous rulings on questions of law which arose during the trial. The judge refused the plaintiff's request to charge the jury that since a violent death had been shown, and the issue was whether the death was accidental or suicidal, the presumption was that it was accidental and the burden of proof rested upon the defendant to show the contrary by a preponderance of the evidence. The judge also refused to charge that the presumption against suicide is evidence to be considered and weighed by the jury along with all the other evidence in the case. It appears that the judge felt bound by the rules of law laid down in Jefferson Standard Life Ins. Co. v. Clemmer, 4 Cir., 79 F.2d 724, 103 A.L.R. 171. It was there held that in a suit on an accident insurance or on the double indemnity clause of a life insurance policy, the burden of proof is on the person claiming under the policy to show accidental death, and that the presumption against suicide is not itself evidence but a rule of law which, in the case of an unexplained death by violence, requires the conclusion that death was accidental until credible evidence of suicide is offered; and when such testimony is offered, the jury passes upon the issues in the usual way, taking into consideration the abnormality of suicide and giving it such probative force in connection with the other facts of the case as their judgment dictates.

■ It is contended that these are not the governing rules in South Carolina, as announced by its highest court, which we are bound to follow under the doctrine of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. We shall assume, without deciding,[1] that the question here at issue falls within the doctrine of that case; but we are unable to say, after a careful examination of the South Carolina decisions, that they require the trial judge in a case like this to give to the jury the instructions requested by the plaintiff. It is true that there are a number of South Carolina cases which speak of the presumption against suicide and of the burden of proof resting upon an insurance company to show suicide as a defense to recovery upon a policy of insurance, and it has been said that when the plaintiff makes out a prima facie case of violent death, the burden shifts to the defendant. See Latimer v. Woodmen of the World, 62 S.C. 145, 151, 40 S.E. 155; McKendree v. Insurance Co., 112 S.C. 335, 99 S.E. 806; Dill v. Sovereign Camp, 126 S.C. 303, 120 S.E. 61, 37 A.L.R. 167; Sanders v. Commonwealth Life Ins. Co., 134 S.C. 435, 447, 132 S.E. 828; Swofford v. Life Ins. Co., 159 S.C. 337, 157 S.E. 7; Linnen v. Commercial Casualty Co., 152 S.C. 450, 453, 150 S.E. 127. But with the exception of the last-named case,[2] these were life insurance cases in which the insurer, as defendant, was setting up an affirmative defense under a provision of the policy whereby the insurer was freed from liability in case of suicide, and therefore had the burden, under the settled rule, of showing that the case fell within the excepting clause. Reference to this situation is made in some of the cases. Thus, in Latimer v. Woodmen of the World, supra [62 S.C. 145, 40 S.E. 156], it was said that "the defense of intentional self-destruction to a policy providing a forfeiture for that cause is an affirmative defense, and the insurer seeking to avail thereof must specifically plead it and establish it by the preponderance of evidence"; and in Marsh v. Pioneer Pyramid Life Ins. Co., 174 S.C. 59, page 63, 176 S.E. 878, 879, where the suit was brought on a double indemnity policy and the plaintiff sought to recover only the face of the policy, the court said "it was not necessary for the plaintiff to show that the insured did not commit suicide, but it was necessary for the defendant to show that the insured did commit suicide"; and in Mandis v. New York Life Ins. Co., 177 S.C. 390, 181 S.E. 472, the court said that it must be kept in mind that the burden of proving death by suicide as a defense in a suit on an insurance policy is on the defendant.

1 For a consideration of this question see Cities Service Oil Co. v. Dunlap, 308 U.S. 208, 60 S.Ct. 201, 84 L.Ed. 196, Channell v. Sampson, 1 Cir., 108 F.2d 315; Equitable Life Ins. Co. v. MacDonald, 9 Cir., 96 F.2d 437; Ohlinger, Federal Practice, pp. 349–352; Clark, Procedural Aspect of the New State Independence, 8 U.S.L.W. 602.

2 In Linnen v. Commercial Casualty Co., 152 S.C. 450, 150 S.E. 127, the situation was analogous as the insurance company set up an affirmative defense in a suit on an accident policy.

772

See, also, Jennings v. Clover Leaf Life Ins. Co., 146 S.C. 41, 44, 53, 143 S.E. 668.

In Mandis v. New York Life Ins. Co., supra, suit was brought to recover double the face of the policy under a double indemnity clause, and the Insurance Company set up the defense of suicide within two years of the issuance of the policy and therefore denied all liability. The court's attention was confined to the single question whether there should have been a directed verdict for the defendant. The burden of proof to show suicide is of course upon the defendant under such circumstances. The point does not seem to have been made that in such a situation the burden is on the plaintiff to prove accidental death in order to recover the double indemnity, with the result that if the jury cannot say on which side lies the preponderance of the evidence, they should find a verdict against the insured for the face of the policy, but should deny double recovery to the beneficiary.

In the pending case, on the other hand, the Insurance Company has paid the face of the policies and the beneficiary is suing on the double indemnity clause which is applicable only in case of accident. Manifestly, the burden rests upon the plaintiff to bring herself within the scope of this clause by showing that the death was accidental. A similar situation existed in Goethe v. New York Life Ins. Co., 183 S.C. 199, 190 S.E. 451, where the Insurance Company had paid the face of the policy but denied double liability on the ground that death had resulted from heart trouble and not from accident by sunstroke as claimed by the policyholder. The court said: (183 S.C. page 204, 190 S.E. page 453). "The burden was doubtless upon the plaintiff to present evidence from which the jury could properly find that the death of the deceased resulted from injuries of the nature or kind against which the policy insured him". The same principle applies when, as here, the plaintiff is seeking to establish an affirmative right under the accident clause of the policy and the defense is suicide. The setting up of this defense does not relieve the plaintiff of the usual burden to prove the case, although she is materially aided in doing so by the presumption against suicide based upon the common experience of mankind. In our opinion, the refusal of the court to charge the jury that the burden is on the defend-ant in this case to show suicide was not erroneous under the South Carolina law.

Nor was it error in our opinion to refuse to charge the jury that the presumption against suicide has the weight of evidence. It is true that the Supreme Court of South Carolina has spoken of the presumption against suicide as sufficient to carry a case to the jury, e. g., Marsh v. Pioneer Pyramid Life Ins. Co., supra. But this is only another way of saying that when an unexplained death by violence is established, the legal inference is that the death was caused by accident rather than by suicide. It would not be in accord with the spirit of the South Carolina decisions to single out this inference as possessing some mysterious and extraordinary value, for the court has often said that when the only reasonable inference that can be drawn from the evidence is that the death was suicidal, a verdict for the defendant must be directed. Linnen v. Commercial Casualty Co., supra; Dill v. Sovereign Camp, supra; Swofford v. Life Ins. Co., supra; Burbage v. Curry, 127 S.C. 349, 121 S.E. 267; McLane v. Reliance Life Ins. Co., 192 S.C. 245, 6 S.E.2d 13. We find the point clearly set forth as we search the South Carolina decisions for guidance, in the words of Justice Bonham of the Supreme Court of South Carolina in Craig v. Clearwater Mfg. Co., 189 S.C. 176, 183, 200 S.E. 765, 768. Speaking with approval of a recent decision of the Supreme Court of the United States he said: "In the case of New York Life Insurance Company v. Gamer, 303 U.S. 161, 58 S.Ct. 500, 82 L.Ed. 726, 114 A.L.R. 1218, in an opinion filed February 14, 1938, Mr. Justice Butler delivered the opinion of the Court; Mr. Justice Black dissenting. The action was to recover double indemnity on an insurance policy. The cardinal issue involved was whether the policy insured 'from bodily injury effected solely through external, violent, and accidental means.' (Page 501.)"

The defense was that the deceased committed suicide.

The court said: " 'Upon the fact of violent death without more, the presumption, i. e., the applicable rule of law, required the inference of death by accident rather than by suicide. As the case stood on the pleadings, the law required judgment for plaintiff. * * * It was not submitted on pleadings but on pleadings

and proof. * * * The evidence being sufficient to sustain a finding that the death was not due to accident, there was no foundation of fact for the application of the presumption; and the case stood for decision by the jury upon the evidence unaffected by the rule that from the fact of violent death, there being nothing to show the contrary, accidental death will be presumed. *The presumption is not evidence and may not be given weight as evidence.'* (Italics added.) Citing authorities,[3] both from Federal and State Courts.

"It is true that this case is not binding on us, but its reasoning and logic are appealing."

The Chief Justice also quoted from Baker v. Western Union Telegraph Co., 87 S.C. 174, 69 S.E. 151, where the South Carolina cases on the force and effect of presumptions in negligence cases are summarized, and it is pointed out that when any fact raises the presumption of negligence, *such fact* stands as evidence of negligence throughout the trial, to be weighed with the rebutting evidence in deciding on which side the preponderance of evidence lies; but if the evidence offered by the defendant clearly explains the fact on which the presumption rests and shows due care plainly and indisputably, the presumption is completely destroyed.[4]

 Our conclusion is that it would be in accord with the South Carolina decisions to charge the jury under the facts of this case that the burden of proof rests upon the plaintiff, and that in order to recover, she must prove by a preponderance of evidence that the death of the assured was accidental; and that if the minds of the jury are in a state of equipoise on this point, so that they are unable to determine the issue, they should find a verdict for the defendant. The jury should also be told that since the fact of violent death is proved, a presumption or rule of law comes into play which requires an inference of death by accident rather than by suicide, and that while this fact with its attending inference is not alone decisive of the case, it should be considered with all the other evidence in deciding whether or not the plaintiff has borne the burden of proof imposed upon her.

 The evidence relating to the statement of the wounded man, when found, that he had shot himself accidentally, should have been admitted as part of the res gestae. There is the possibility that the deceased made away with himself in such a fashion as to present the appearance of accident, and that his statement was a part of a well laid plan to this end. The trial judge might well have admitted the statement with a warning to the jury, but it would have been an invasion of the jury's province to make this possibility the basis for rejecting the evidence. Its

---

[3] Including Jefferson Life Ins. Co. v. Clemmer, 4 Cir., 79 F.2d 724, 730, 103 A.L.R. 171.

[4] The opinion in the instant case was prepared prior to May 22, 1940, when the Supreme Court of South Carolina, speaking through Chief Justice Bonham, announced its decision in McMillan v. General American Life Ins. Co., 9 S.E.2d 562, an action upon a life insurance policy defended on the ground that the death was suicidal. The plaintiff offered no testimony in chief except the policy of insurance, and depended upon the presumption against suicide to carry the case to the jury. The court found from an examination of the testimony offered by the defendant and the rebuttal testimony offered by plaintiff that death by suicide was the only reasonable conclusion that could be drawn, and therefore ruled that the refusal of the trial court to direct a verdict for the defendant was erroneous. Reviewing the plaintiff's contention that under certain South Carolina decisions she might stand on the presumption against suicide alone, the court said that the cases did not support the proposition, but that if there was such a holding in any decision of the court it should be considered as overruled. The court quoted from Craig v. Clearwater Mfg. Co., 189 S.C. 176, 200 S.E. 765, New York Life Ins. Co. v. Gamer, 303 U.S. 161, 58 S.Ct. 500, 82 L.Ed. 726, 114 A.L.R. 1218, and Jefferson Standard Life Ins. Co. v. Clemmer, 4 Cir., 79 F.2d 724, 103 A.L.R. 171, and definitely held that the presumption against suicide is one of law and not of fact, which does not have the force and effect of evidence, and of itself is insufficient to take a case to the jury. A dictum that the presumption becomes conclusive when the defendant offers no evidence was repudiated, and it was held that there must be some evidence offered by the plaintiff on which to base the presumption; and when the defendant offers evidence, the testimony offered by the plaintiff must be considered as is any other testimony in the case.

774

admissibility depends upon whether the declaration should be regarded as a narrative of a past transaction, or a part of the res gestae in that it was made under the influence of an occurrence to which it related, and so soon thereafter in point of time as to negative the probability of fabrication. See the decision of this court in Chesapeake & O. Ry. Co. v. Mears, 4 Cir., 64 F.2d 291, where the declaration of an injured railroad conductor, when found a few minutes after an accident, as to the negligent handling of the cars was held to be admissible. The reason given was that the accident produced a shock sufficient to render the statement relating to it spontaneous and unreflecting, · and that the statement was made while the nervous excitement might still be supposed to dominate the declarant and his reflective powers were yet in abeyance. See, also, Provident Life & Accident Ins. Co. v. Eaton, 4 Cir., 84 F.2d 528. A similar view is held by the Supreme Court of South Carolina; Funderburk v. Powell, 181 S.C. 412, 187 S.E. 742; State v. McDaniel, 68 S.C. 304, 47 S.E. 384, 102 Am. St.Rep. 661. These cases, both state and federal, wisely hold that in the admission of testimony of this kind much must be left to the exercise of a sound discretion by the presiding judge. While there is some uncertainty in the pending case as to the precise interval which elapsed between the firing of the fatal shot and the discovery of the deceased by the occupants of the passing car, it is not disputed that the interval was very short, so that it may fairly be said that the conditions of admissibility were met.

Reversed.