14980

McLANE v. RELIANCE LIFE INS. CO. OF PITTSBURGH

(6 S. E. (2d), 13)

April, 1939.

*Messrs. Edward L. Craig, E. A. Blackwell* and *Laurie E. Croft,* for appellant,

*Messrs. Garvin & Simons,* for respondent,

December 12, 1939.

The opinion of the Court was delivered by MR. CHIEF JUSTICE STABLER.

This is an action on a life insurance policy. It was alleged that the company, on December 15, 1936, insured the life of one Rudolph McLane in the sum of $1,000.00, and that Cora G. McLane, his mother, was named as the beneficiary thereof; that the insured died on January 3, 1938, and that the plaintiff furnished the insurer, as she was required to do, with proofs of his death, but that the company refused to pay the amount, or any part thereof, due and owing her under the terms of the policy.

The defendant admitted the issuance of the insurance and · that the monthly premiums had been paid, including the one due December 15, 1937, but denied all liability on the ground, as alleged by it, that the insured's death was due to suicide within two years immediately following the date of the issuance of the policy, a risk not assumed by the company, and pleaded the provisions of the insurance contract with regard thereto. It also alleged that the plaintiff, in the proofs of death furnished by her, agreed that the written statements and affidavits of physicians who attended or treated the insured, should constitute a part thereof; and that in the physician's statement accompanying such proofs, it was said that death was due to suicide.

The plaintiff thereupon served a reply directed to the first

defense of the defendant's answer, namely, that a physician's statement accompanied her proofs of death. She alleged that she knew nothing of any such statement and that, if in existence, it had been secured by the insurer and attached to the proofs of death without her knowledge or consent; and that if it contained the allegations claimed by the company, it was inconsistent with such proofs, and could not be made a part thereof. The defendant demurred on the ground that as the answer did not contain a counterclaim, the purported reply did not constitute a defense to the new matter set up.

The case was tried on April 7, 1939, before Judge Stoll and a jury. When the reply was about to be read, counsel for the defendant made objection to this being done for the reason, as they insisted, that it was not a pleading but just testimony. After hearing argument thereabout, the presiding Judge, holding that it was a matter in his discretion, overruled the demurrer and the objection and permitted the reply to be read. The plaintiff was awarded by the jury, to whom the case was submitted, the face amount of the policy, with interest from April 14, 1938.

The appellant-defendant below, charges the trial Court with error in the following particulars: (1) In overruling the demurrer to plaintiff's reply; (2) in the admission of certain testimony, and (3) in refusing to grant defendant's motion for a directed verdict. These we will consider in the order named.

First. With regard to this question, in *Williams v. Jefferson Standard Life Ins. Co.*, 181 S. C., 344, 187 S. E., 540, 543, the Court had this to say: "Where the new matter, set up in the answer, does not constitute a counterclaim, no reply is necessary or allowable, except under an order of the Court. It will thus be seen that the provisions of this section, requiring a reply to a defense by way of avoidance, was intended for the benefit of the defendant by giving him notice of the facts upon which the plaintiff relied. *Kennedy v. Hill*, 79 S. C., 270; 60 S. E., 689; *Rish v. Seaboard Air Line Railway*, 108 S. C., 30, 93 S. E., 250."

It is conceded that the plaintiff's reply in the case at bar was not made under Section 471 of the Code or ordered by the Court as provided by that section. While, therefore, it was improperly made, a reading of it discloses that it merely denied "that the clause in defendant's said answer as purporting to be a part of proof of death furnished by plaintiff was or is an agreement by plaintiff or was or is in any manner applicable to her," and stated certain alleged facts as constituting the basis of such denial. As the plaintiff would have had the right, under the issues made by the complaint and the answer, to show this without a reply, the question is whether the defendant was prejudiced by the reading of it as contended.

*Davis v. Schmidt,* 22 S. C., 128, was a case in which a similar question arose. There, the trial Judge failed or refused to strike out the reply interposed by plaintiff to defendant's answer. On appeal, this Court said: "We see no error of law in the Circuit judge failing to rule on the motion and demurrer interposed by the defendant to the reply of plaintiff. It is true the reply was not put in under the provisions of the code, there being no statement that a reply was ordered by the court on account of new matter in the answer constituting a defence by way of avoidance. Nor was there a counter-claim set up in the answer requiring a reply. * * * The reply therefore was wholly unnecessary and perhaps improper, but we do not see that it should have been formally stricken out. * * * Besides, the reply amounted to nothing but a denial in substance that the defendant had furnished the plaintiff $150 in money under the agricultural lien, as alleged in the answer, and which the plaintiff no doubt would have had the right to deny by testimony without the reply, in the issue raised by the complaint and the answer."

But counsel for the appellant argue that the reading of the reply enabled the plaintiff to get before the jury incompetent testimony of some probative force upon a material issue of fact, which was prejudicial to the

defendant. We are not in agreement with this contention. In the first place, we do not think it may correctly be held, in the circumstances appearing, that the reply was more than a pleading, although an improper one. But even if it served as testimony by the reading of it, as is claimed, it was subsequently withdrawn by counsel for plaintiff. In the second place, when the witness, Garvin, was on the stand, he stated that he assisted the plaintiff, the claimant, in making up the proofs of death, and testified as to just what was done, this testimony going to some extent to the matters alleged in the reply. On cross examination of this witness, counsel for defendant, without reserving his objection to the reply as incompetent testimony, questioned the witness thereabout. The appellant, therefore, has no good cause to complain, as it thereby waived such objection. *Snipes v. Augusta-Aiken Ry. & Electric Corporation,* 151 S. C., 391, 149 S. E., 111. An examination of the cases cited by counsel for the defendant discloses that they are not controlling here, as their facts easily differentiate them from the case at bar.

Second. C. V. Glover, a witness for the plaintiff, testified that he was in the United States Army; that the deceased, Rudolph McLane, had been a member of his company and that he had known him well for a period of six years; that McLane was a fine physical specimen of a man, "good natured and never was anything wrong with him"; that on January 3, 1938, the witness was "in charge of our recreation," and that it was his duty to stay around the barracks; that about ten or eleven o'clock McLane came into the room and the witness asked him where he was going, to which he replied, "I got my gun and going to clean it up"; and that he then went on upstairs, his room being three floors above, and that in about five minutes the witness heard the report. The statement testified to as having been made by McLane was objected to by counsel for the defendant on the ground that they would have no opportunity to cross examine the deceased, but the objection was overruled, the Court holding that as the defendant charged that the in-

sured came to his death by suicide, any testimony tending to show the state of his mind just preceding his death was proper and competent. W. H. Fuller, also a witness for the plaintiff, testified that he was in the same company with Sergeant McLane, the deceased, at the time of his death, and was his immediate superior officer; that he saw McLane two or three times that morning—in the barracks and in the park; that in the park "he asked my permission to go to the barracks—said he had to clean his gun," and that he gave him permission to do so; that he saw him just as he started up the stairway and in about two minutes heard the gun fire. Objection to the above-quoted testimony of this witness on the ground of incompetency was overruled by the Court. Fuller also stated that McLane seemed to be in good spirits the whole morning of January 3rd, this being his general mental attitude; and that he knew of no army regulations that the deceased was worrying about.

We do not think there was error as claimed. It is ██ true that the policy provided that if the insured, whether sane or insane, came to his death by suicide within two years immediately following the date of the issuance of the policy, the liability of the company would be limited to the amount of the premiums paid. But it is also true that "the presumption of fact is that a man will not take his own life." *McKendree v. Life Insurance Co.*, 112 S. C., 335, 99 S. E., 806, 807. The defendant alleged that the insured committed suicide, and for that reason plaintiff's recovery was barred under the policy. The issue, therefore, as to whether McLane took his life intentionally, involved an inquiry into his state of mind at the time of his death; and his statement, that he was going to his room to clean his gun, made just a few minutes before the shot was heard, was admissible, as held by the trial Judge, as tending to establish a mental condition—a link in the chain of circumstances testified to for that purpose, and admissible as tending to show the absence of suicidal intent.

But even if error, which is not conceded, appellant is not in a position to complain. On cross examination of the witness Fuller, counsel for the defendant, without reserving their objection, brought out the same testimony objected to by them on direct examination. As was said in *Snipes v. Augusta-Aiken Ry. & Electric Corporation, supra* (151 S. C., 391, 149 S. E., 112), "it has been held by this court repeatedly that, where similar testimony is brought out without reservation of the objection, it will cure the alleged objection made in chief, and make the testimony competent." See also *State v. Robinson,* 149 S. C., 439, 147 S. E., 441, and other decisions.

Third. The defendant's motion for a directed verdict was made on the ground that "the only reasonable inference to be drawn from the relevant and competent evidence is that the insured committed suicide within two years of the date of the policy." The ruling of the trial Judge was as follows: "I don't weigh evidence and in this case there is evidence that he asked permission to clean his pistol and in a short time, he is killed. If a man wants to kill himself, he would not get permission to get a pistol and kill himself. If he wanted to kill himself, he wouldn't care whether he had permission or not. A good many people are killed by accident with a pistol and I think there is ample testimony to go to the jury, so bring the jury out. The motion is refused."

The contention is that the trial Judge erred in refusing to direct a verdict for the reason that the presumption against suicide was overcome by the testimony of the witness Bowen, and that the evidence offered by plaintiff in reply thereto was of no probative value.

In 37 C. J., 618, the following is stated: "In accordance with the rule that the presumption is always against suicide or self destruction on the part of a sane person, who came to his death under circumstances not explained, where the cause of insured's death is unexplained and the circumstances are such that it might have resulted from accident, homicide, negligence, natural causes, or suicide, the pre-

sumption is in favor of death by one of such other causes and against death by suicide. Therefore the burden of proving death by suicide as a defense is on defendant, notwithstanding the verdict of the coroner's jury was suicide."

See also *Sanders v. Commonwealth Life Insurance Co.,* 134 S. C., 435, 132 S. E., 828; *Dill v. W. O. W.,* 126 S. C., 303, 120 S. E., 61, 37 A. L. R., 167; *Swofford v. Life Insurance Co.,* 159 S. C., 337, 157 S. E., 7.

In the case at bar, the insured, as already indicated, died from a gunshot wound. He was found in his room shortly after the shot was heard lying on his bed in a dying condition.

Two witnesses testified for the defendant. One of these, F. S. Bowen, Jr., stated that he was a captain in the United States Army; that on January 3, 1938, he was on duty at Fort Benning, Georgia, and that the insured, whom he knew, was in his command; that about eleven o'clock on the morning of the 3rd, the witness received a report that McLane had been shot, and that he went up to the room of the deceased, which was on the third floor of the barracks, and found him lying face up on his bed with a bullet wound on the left side of his body, and that he was in a comatose condition; that "when I examined him he had a bullet wound over his left breast that apparently caused his death. I found on the floor the bullet that apparently had been fired from his gun"; and that the bullet was underneath the cot on which he was lying, and that a Colt automatic was lying on the floor about three feet to the right of the bed on which McLane lay. He further stated that the pistol contained no loaded cartridges but did have one empty shell in it, which was caught in the receiver where it had failed to be ejected; and that from the condition of its barrel, it appeared that the gun had been fired within a very few minutes. The witness also testified as to the mechanism of a pistol of that type and as to how it could be fired, and what might happen in case the weapon was defective. He explained how it could be cleaned, but stated that he found nothing in the room in

the nature of material or of an instrument which might have been used for that purpose.

The defendant's other witness, Allen N. Bracher, testified that he was a captain in the United States Army, Medical Corps, and that he was at Fort Benning, Georgia, on January 3, 1938; and that the physician's statement furnished by him to the defendant company, in which he said that McLane came to his death by suicide, correctly set forth his answer to the question as to the cause of insured's death. On cross examination, however, he testified that he had no ground, no physical evidence, on which he could base such an opinion "other than the fact that the man had a wound in his chest at the time he was brought in."

Some of the testimony offered by the plaintiff in reply has been set out above. The trial Judge, in refusing to direct a verdict, called attention to the evidence that McLane, a few minutes before he was shot, asked permission to clean his pistol, and stated the reasonable inference to be drawn therefrom. The insured, according to those who had been his close associates for a number of years, was a strong young man, healthy and athletic. They stated that he was jovial and cheerful all the time and was apparently never worried about anything, and that on the morning of his death he was in his usual cheerful mood. Nothing was suggested that tended to show any apparent reason for his committing suicide. On the contrary, his mental attitude and conduct, as testified to, reasonably pointed to some cause of death other than self destruction. In addition to this, there was testimony, although disputed, which tended to show that the pistol was defective, in that it did not perform as it should. Also, that it was loaded by inserting in its handle a clip which held seven cartridges, one of which could be made to enter the barrel by the pulling back of a slide on top of the weapon; that it was against regulations for a soldier in the position of McLane to take ammunition from the supply room to his own room, and that when he checked out a pistol for cleaning, none was furnished him; that it

was possible, in the unloading of one of these pistols, to take out the magazine and leave the cartridge in the barrel, and that this was likely to happen when the pistol was checked out by the same man that checked it in; that a soldier could carry his pistol to his own room to be cleaned, and that a handkerchief, with a cleaning rod, was often used for such purpose. A witness stated that he went to the room of the deceased at the dinner hour, and that he discovered a dent in the wall about the size of a quarter, which appeared to have been caused by a bullet; that it was about three feet up on the wall, and about a foot above the level of the mattress on the bed; and that to a person sitting on the edge of the bed, this dent would be on a level between his waist and his head.

We deem it unnecessary to further review the testimony. It is clear from a careful reading of it that the trial Judge could not have said, as a matter of law, that the presumption against suicide had been overcome and that the fact of self destruction had been established. More than one inference could be drawn from the evidence as to how the insured came to his death. Judge Stoll, therefore, properly submitted that question to the jury. See cases cited.

The judgment of the Circuit Court is affirmed.

MESSRS. JUSTICES CARTER, BONHAM, BAKER and FISH-BURNE concur.