15097

SINCLAIR REFINING CO. v. STROUP

(9 S. E. (2d), 214)

*Messrs. Wolfe & Fort,* for appellant,

*Messrs. A. Ray Godshall* and *Dobson & Dobson,* for respondent,

July 4, 1940.

*Per curiam.*

Appellant instituted its action in the Court of Common Pleas for Cherokee County, against respondent, Lake W. Stroup, and the executrix and executor of the estate of Ed Phillips, deceased, on an alleged partnership obligation arising out of an alleged shortage in merchandise, to wit, petroleum products furnished by appellant to its Gaffney, S. C., agency in the name of Lake W. Stroup, it being alleged that Lake W. Stroup and Ed Phillips were partners in said agency, under the name of Lake W. Stroup. The complaint alleged an indebtedness of this agency of $1,362.65, and indebtedness on account of commissions, etc., by appellant to said agency of $249.44, leaving a net indebtedness by the agency to appellant of $1,113.21.

Counsel for the estate of Ed Phillips demurred to the complaint in so far as it pertained to the said estate upon the ground that twelve months had not elapsed since the death of Phillips before the commencement of the action. Whereupon, the Circuit Court passed an order dismissing the complaint as to said estate. Omitting the preamble to this order, it reads as follows: "It is ordered: That the action herein be, and it is hereby dismissed insofar as it is against the estate of Ed Phillips, without prejudice as to the right of plaintiff to pursue said action against the defendant, Lake W. Stroup, as alleged, and without prejudice and with leave to renew its action against the legal representative, or representatives of Ed Phillips' estate at the expiration of the twelve months from the death of the said Ed Phillips, if plaintiff be so advised and elects so to do."

Following the signing of the above order, appellant served an amended complaint in which again a partnership was alleged to exist between respondent and Ed Phillips.

Paragraphs two, three and four of the amended complaint of appellant are as follows:

"(2) That heretofore, to wit, on or about the first of July, 1937, an agency agreement was negotiated by plaintiff for the sale and distribution of its petroleum products

in Gaffney and neighboring territory, which agreement was consummated in a written contract of agency August 3, 1937, in the name of the defendant, Lake W. Stroup. That said agency relationship was continued by subsequent renewals of said contract through and inclusive of October 24, 1938, when said relationship was mutually terminated.

"(3) That the plaintiff is informed and believes that said agency contract herein alleged was entered into by the said Lake W. Stroup with the full knowledge and acquiescence of Ed Phillips and that while said contract was in the name of the defendant, Lake W. Stroup, individually, it was in fact a partnership agency as between the said Ed Phillips of Cherokee County, now deceased, and the said Lake W. Stroup, and that the said Ed Phillips contributed both money and property in the financing and equipping of said agency and participated with the said Lake W. Stroup in procuring and owning real estate, equipment and other assets used by said agency and shared with the said Lake W. Stroup in the profits of said agency, and that said alleged partnership still owns certain real estate and other assets formerly used in said agency business and which is amenable to a judgment herein.

"(4) That between the date of the commencement of said agency and its termination and during the life time of Ed Phillips, plaintiff, under and pursuant to the terms and conditions of said contract and for the purposes of sale and marketing as therein provided, furnished and delivered to said agency under the trade name of Lake W. Stroup, certain of its petroleum products and that audits of said agency were periodically made by plaintiff to ascertain the status as to amount of stock received on hand and disposed of by said agency and such an audit was made on or about, and as of the date of the termination of said contract, to wit, October 24, 1938, and as a result of said audit covering a period of time from approximately June 7, 1938, there were petroleum products and equipment which had been delivered to said agency by plaintiff pursuant to said agency contract

and for the purposes therein stipulated, and unaccounted for by said agency for said period in the value of $1,362.65 which, less the following credits, to wit: * * * left a net balance of $1,113.21 due plaintiff per itemized statement attached as Exhibit 'A' and for which plaintiff has made demand."

The answer of respondent admitted that appellant was a corporation, and engaged in the business of wholesale marketing and distribution of petroleum products; denied each and every one of the remaining allegations of the complaint, and demanded strict proof of the same. Further answering, respondent alleged "that if there was any loss, as alleged in the complaint, the same was caused by the fact that the property set forth in the complaint, and known as 'products' were stolen, and lost by shrinkage and that neither this defendant, his agents or servants had anything to do in any manner whatsoever, either before or after the fact, with the larceny or shrinkage"; that respondent reported in due and proper time the acts of larceny and shrinkage to appellant; that although respondent did not own the warehouse in which appellant's products were stored and kept, appellant directed the specifications for the building, and he had to abide by same; that the estate of Ed Phillips was not responsible in any event for any losses or amounts he may be due appellant. Respondent also interposed a counterclaim for $231.49, alleging that he was due appellant $17-.95 which should be deducted from the $249.44 due him by appellant.

Upon a trial of the case, and on the testimony admitted in evidence, a jury rendered a verdict in favor of respondent, Lake W. Stroup, in the amount of his counterclaim.

Appellant has fifteen exceptions, but in printed argument states the "Questions Involved" as follows:

"(1) Was plaintiff entitled herein and in the circumstances alleged, to have the question of Lake Stroup's partnership with Ed Phillips in the business under his con-

tract with the Sinclair Refining Company, adjudicated in this action, to the extent of binding partnership assets?

"(2) Was there *novation* of contract between Stroup and the Sinclair Refining Company such as would have relieved him of liability for losses of petroleum products entrusted to him under his written contract, because of theft?

"(3) Was the defendant Stroup entitled under his pleadings, to adduce oral testimony tending to show *waiver* of the stipulations of the written contract?

"(4) Should the Court have submitted to the jury the proposed special issue of partnership under Section 602, of the Code?

"(5) Should the Court have directed a verdict for plaintiff (a) on the special issue of partnership; (b) on the case as a whole, and for the amount alleged to be due plaintiff?

"(6) Is the plaintiff not entitled to have this Court remand this case with instructions under Rule 27 of the Supreme Court, the evidence being susceptible of but one inference and this favorable to said verdict?"

In the light of the verdict of the jury, and our holding herein, it is obviously unnecessary to discuss "Questions" 1, 4 and Sub-division (a) of 5.

There were three contracts in writing entered into between appellant and respondent dated respectively August 3, 1937, November 15, 1937, and August 1, 1938. All were identical in phraseology and provisions, except as to the typewritten matter wherein some additions to merchandise and slight variations as to commissions were made. Sections 17 and 22 of these contracts read as follows:

"17. The Agent hereby assumes all responsibility and full liability to the Company, and hereby agrees to indemnify and reimburse it, for any shortages or losses in sales, collections or deliveries hereunder, or in the products, equipment or property of the Company entrusted to Agent or coming under Agent's control including responsibility and liability for losses of Company funds by reason of theft, robbery or burglary, and the Agent hereby authorizes the

Company to deduct from any and all monies due to and earned by the Agent during the life of this agreement, and retain for its own use, amounts for the payments of such shortages or losses; and the Agent agrees that Agent's liability hereunder shall be that of an insurer, except as to losses resulting from fires not due to Agent's negligence."

"22. * * *. All proposals, negotiations and representations with reference to the matters covered by this agreement are merged in this instrument, and no amendment or modification of this agreement shall be valid unless evidenced by a writing signed by a representative of the Company authorized to sign this instrument."

Preliminary to a discussion of the admission in evidence of a novation or modification of the contracts in reference to stolen merchandise, it should be noted that respondent's claim of losses on account of theft occurred in July, 1938. Certainly none occurred prior to November 15, 1937, the date of the second contract; and no point was made by respondent that there is any possible ambiguity in Section 17 of the contract. We express no opinion thereabout, but pass upon the grounds of appeal on the same theory as the case was tried on Circuit, to wit, that respondent was wholly responsible for the petroleum products and merchandise entrusted to him, unless there had been a modification of the contracts.

When Mr. L. L. Trego, the assistant district manager of appellant, and the one who negotiated the contract with respondent, was on the stand as a witness for appellant, on cross examination, he was asked if shortly after the contract of August 3, 1937, had been executed, and when respondent objected to Paragraph 17 of the contract, he didn't tell respondent that he (respondent) would not be responsible for anything that was stolen if he notified the company (appellant) ; and the answer was: "Absolutely not." Later on in his testimony and still on cross examination, Trego testified in effect that the appellant does not expect the agent to pay for goods stolen without his fault. Another witness

for appellant, W. M. Hannon, who was its special representative, on cross examination, was asked, " * * * what responsibility do you hold to an agent in case of a robbery that the agent had nothing to do with and the same is reported to the Company?" The answer to this question was : "If upon investigation we find to our own knowledge that it was not the agent's fault the Company (appellant) absorbs the loss." The witness further testified he made no investigation of the robberies reported by respondent.

The foregoing testimony was not objected to by appellant. However, when on direct examination the respondent, Lake W. Stroup, undertook to give testimony of a subsequent parol agreement eliminating his liability under Section 17 of the contracts for merchandise stolen, appellant objected on the ground that such testimony tended to vary the written contract. The objection was overruled because Mr. Trego, the witness for appellant, had without objection on cross examination testified thereabout.

This, within itself, did not make such evidence admissible, especially in view of the fact that after the alleged change in the contract, respondent had signed a new contract containing the identical provision (17) as the one alleged to be objectionable in the first contract. All of the contracts contained Section 22, providing the sole manner in which the written contracts could be amended or modified. However, on cross examination of respondent, the appellant's counsel, without reservation, examined respondent as to the modification of the contract, as appears by the following questions and answers:

"Q. When was this conversation with Trego about not holding yourself responsible? A. About six weeks after I put up the building. On his first trip to Gaffney.

"Q. What occasioned your making that statement to Mr. Trego? A. I was reading the contract.

"Q. You hadn't read it until six weeks after? A. It was a long written form. I didn't go over it thoroughly.

"Q. You are an. intelligent man and didn't read Section 17? A. I didn't read it until I received the contract back at the office.

"Q. You don't pretend to suggest that they inserted that section? A. No, sir.

"Q. You think it was there when you signed it? A. I signed that paper.

"Q. If you had this conversation with Mr. Trego about six weeks after you put up the plant why did you sign the two other contracts with the same paragraph in them? A. Because they told me from time to time I wasn't responsible for stolen goods.

"Q. Who told you? A. Mr. Trego, Jack Whelchel and Mr. .Hannon.

"Q. If you didn't want to live up to Section 17 why didn't you say: 'Mr. Trego, strike that section out?' You are intelligent. A. Yes, sir, I will answer that. He is district agent, this contract is printed in New York."

(Note: Mr. Whelchel was an employee of appellant.)

Under the above circumstances appellant is not now in a position to question the admissibility of this testimony. *Smith v. Metropolitan Life Insurance Company,* 191 S. C., 310, 4 S. E. (2d), 270; *McLane v. Reliance Life Insurance Company,* 192 S. C., 245, 6 S. E. (2d), 13.

We are unable to find in the record where Section 22 of the contract was ever called to the attention of the trial Judge, or that he made any ruling thereabout.

We have carefully reviewed the record in this case, and are of the opinion that there is evidence from which a reasonable inference can be drawn that the "shortage" was occasioned by evaporation or shrinkage in the products of appellant due to their volatility, and from losses through theft. Therefore, the issue of the indebtedness of respondent to appellant was one to be passed upon by the jury.

The judgment appealed from is affirmed.

MR. CHIEF JUSTICE BONHAM, MESSRS. JUSTICES BAKER, FISHBURNE and STUKES and MR. ACTING ASSOCIATE JUSTICE WM. H. GRIMBALL concur.