## 15119

BOWDEN v. POWELL *ET AL.*
LOKEY v. SAME
MASON v. SAME

(10 S. E. (2d), 8)

*Messrs. Harley & Harley* and *Hugh O. Hanna,* for ap-
pellants,

*Messrs. George Warren, John L. Bowden* and *Thos. M.
Boulware,* for respondents,

July 8, 1940.

The opinion of the Court was delivered by MR. JUSTICE
FISHBURNE.

The plaintiffs brought three separate suits for the re-
covery of damages, actual and punitive, alleged to have been
suffered by them because of the failure of the defendants to
stop a passenger train at Myers, a flag station in Hampton
County, so that they could get aboard. The causes of action
arose out of the same facts and circumstances. The plain-
tiffs allege that the conduct of the defendants in failing to
stop the train for the plaintiffs was negligent, willful, wan-
ton, malicious, and in utter willful disregard of the plain-
tiffs' rights and the defendants' duty.

By agreement of counsel the three cases were tried to-
gether, and resulted in a verdict and judgment for each
plaintiff in the sum of $5.00, actual damages, and $495.00,

punitive damages. The defendants have appealed in each case, but in accordance with the stipulation of counsel, the appeals will be considered and passed upon as one.

Prior to the trial of the case, the Circuit Court overruled a motion made by defendants to strike from Paragraph 2 of the complaint the following words, to wit, "by pointing toward the ground with the thumb of his right hand, to 'Go to hell,' " upon the ground that the words are irrelevant, redundant, and constitute a mere conclusion.

It is alleged in Paragraph 2 that when the engineer operating the defendants' passenger train passed Myers, without stopping, he looked down from his position on the engine at the plaintiffs, who were waiting at the flag station to board the train, and by pointing his thumb to the ground indicated that they should "go to hell".

An order refusing to strike out is not appealable. *Caldwell v. McCaw,* 141 S. C., 86, 139 S. E., 174; *Nettles v. Nettles,* 138 S. C., 318, 136 S. E., 297; *Osteen v. Atlantic Coast Line R. Co.,* 93 S. C., 61, 76 S. E., 25; *Harbert v. Atlantic & C. A. L. R. Co.,* 74 S. C., 13, 53 S. E., 1001, 1002. In the *Harbert case,* the Court said: "The omission to provide for appeal from an order refusing to strike out is significant, and there was good reason for it. If the circuit court errs in striking out any material allegations of a good cause of action or good defense, it is impossible to remedy it in the course of the trial, because the evidence and the issues submitted to the jury cannot be extended beyond the issues made by the pleading, and on appeal from the final judgment this court could not say there was error of law in confining the evidence and charge to the pleadings. On the other hand, if the circuit court errs in refusing to strike out any pleading or portion of a pleading as irrelevant, the error of submitting an irrelevant issue to the jury may be corrected on appeal from the charge actually made, or from refusal of requests to charge. This view of the matter impairs no substantial right, and pre-

vents multiplicity of useless appeals and the delay and inconvenience which would be incident thereto."

The case of *Nettles v. Nettles, supra,* is an instance in which the rights of the appealing party were properly reserved by duly making objections to the testimony. But in the case at bar, the defendants failed to do this. Nor did they follow the procedure pointed out in the quoted excerpt from the opinion in *Harbert v. Railroad Co., supra.*

Appellants assign error to the lower Court in allowing the plaintiff, R. O. Bowden, to testify, over the objection of the defendants, that the alleged gesture made by the engineer with his thumb signified "go to hell", upon the grounds that such testimony was highly prejudicial, and that there was no proof that the sign was commonly known to mean, "go to hell". When the plaintiff Bowden testified with reference to the derisive gesture, but before actually interpreting its meaning, counsel for appellants "entered an objection just for the sake of the record, upon the ground, this testimony is a mere conclusion on the part of this witness." The trial Judge, without making any ruling, suggested that objecting counsel wait and see what the witness was going to testify about. Later, in his direct examination, the witness, Bowden, testified that the thumb gesture used by the engineer meant "go to hell", and counsel for appellants renewed their objection, which the Court overruled.

We do not deem it necessary to determine whether the testimony objected to was admissible, because if error was committed in its admission, such error was cured by the act of the appellants in bringing out the same evidence on cross examination. Appellant is not in a position to complain, because upon cross examination of plaintiffs' witnesses, the identical testimony was brought out in great detail.

The general rule is that error in the admission of evidence offered by one party is cured by the act of the adverse party in introducing practically the same evidence, or bringing it out on cross examination, but not by

his offering evidence in rebuttal. 5 C. J. S., Appeal and Error, § 1735, page 1018.

It has been repeatedly held by this Court that where similar testimony is brought out without reservation of the objection, it will cure the alleged objection made in chief, and make the testimony competent. *McLane v. Reliance Life Ins. Co.,* 192 S. C., 245, 6 S. E. (2d), 13; *Smith v. Metropolitan Life Ins. Co.,* 191 S. C., 310, 4 S. E. (2d), 270; *Snipes v. Augusta-Aiken Ry. & Electric Corp.,* 151 S. C., 391, 149 S. E., 111.

Appellants complain because the Circuit Court overruled their motion for a directed verdict as to punitive damages. A motion for a new trial was likewise overruled.

The testimony for the respondents tends to show that the three plaintiffs had been in the habit for fifteen years or more of making periodic trips to a hunting lodge owned by the plaintiff, Bowden, and located on the Savannah River, about one-half mile from Myers, the flag station. Throughout this period it was their custom upon leaving the camp, to flag the Seaboard's passenger train at Myers for the purpose of becoming passengers. About 4 o'clock on the afternoon of March 27, 1939, they left camp, and reached the flag station about thirty minutes ahead of train time. It is admitted that it was the duty of the railroad company to stop its train at Myers when properly flagged. There is no depot or other building at Myers. The place is marked merely by a board, and is recognized as a regular flagging point for those who wish to become passengers.

Approaching Myers from South to North the track curves for two or three hundred yards, and on the occasion in question the train was going North. The plaintiffs wished to board it for Garnett, a station five miles away. Hearing the train in the distance, the plaintiff, Mr. Mason, walked about thirty steps away from the flag stop, on the outer side of the curve, so that the engineer could see him as he signalled with his handkerchief for the train to stop. He waved his handkerchief in the usual way, and the engineer responded,

.sounding two short blasts of the whistle, which is the regular signal given when the train indicates that it will stop. The train slackened its speed, and the three plaintiffs picked up their suitcases and guns to be in readiness to board it. But instead of stopping at the dirt road crossing, the train picked up speed and went on its way, leaving the plaintiffs at the flag station. All of them testified that the engineer looked at them and pointed to the ground with his thumb. And the plaintiff, Bowden, testified that in sign language this meant "go to hell"; that he had so understood it all of his life.

For the defense it appeared that approaching Myers from the South the fireman had a clear view of the flag station for at least a quarter of a mile, but that the engineer could not see Mr. Mason on account of the curve, until he got within 330 feet of him. The engineer testified that when he got within that distance he saw one man standing alone about 25 feet from the crossing, but that he did not see him signal, nor did he see a handkerchief in his hand. As he came nearer to the crossing he saw a group of men standing near the track with their luggage, but denied that he at any time saw anyone signal him to stop, and denied that he blew two short blasts of the whistle indicating that the train would stop. The engineer said that only the usual whistle signals were given for the crossing and the flag station. He admits applying the brakes when the train had reached a point about two or three hundred yards from the flag station. With reference to any hand signal or gesture, the engineer denied that he pointed to the ground with his thumb, and asserted ignorance of what such a signal indicated in sign language. In some portions of his testimony he says that he waved at them when passing, and in other parts of his testimony he was uncertain whether he had waved or not. He said that he was an extra passenger engineer and did not operate the particular passenger train very often, but that he knew Myers was a flag station, and if properly signalled it was his duty to stop the train at that point.

There was no other train until the next day, so the plaintiffs secured an automobile the same afternoon, and succeeded in driving from Myers to Garnett, a distance of five miles, over what they describe as the worst road in the world. The road in question runs in part through the Savannah River swamp, was covered with water in places, and full of bog holes. It took them two hours to travel the five miles.

All of the plaintiffs testified that Mr. Mason waved his handkerchief until the engineer answered with the two short blasts of the whistle, which indicated that the train would stop, and that immediately thereafter the engineer "cut off the engine", and the train slowed down, but that it immediately picked up speed as it reached the crossing.

In *Bing v. Atlantic Coast Line R. Co.*, 86 S. C., 528, 68 S. E., 645, 646, the plaintiff brought suit for the willful failure of the railroad company to stop its train at Dunbarton, a station on its line, so that he might get on as a passenger. In the *Bing case* the plaintiff and two witnesses on his behalf testified that they were standing at or very near the station, and that the train did not stop at all. The conductor of the train, the railroad agent, and a passenger testified with equal positiveness that the train did stop long enough to let off and take on passengers. The Court said: "The jury accepted the evidence that the defendant's agent, in violation of the statute, failed to stop the train when it was evident to him that there were passengers to get off and on. For such a conscious breach of duty the defendant would be liable for punitive damages," and upheld the judgment for the plaintiff.

In the case before us the engineer testified that seeing the plaintiffs with their luggage he expected them to signal him, but when he received no signal, he assumed that they had alighted from a train going South, which had passed that point presumably 25 or 30 minutes before, and that they were awaiting some conveyance to take them on their way.

However, viewing the evidence as a whole, and in a light most favorable to the plaintiff, we think the Circuit Judge committed no error in submitting the issue of punitive damages to the jury. With reference to the gesture, which we think was properly in evidence, it was for the jury to say, as applied to the peculiar facts in this case, whether it constituted evidence tending to show derision and a conscious breach of duty.

Appellants have cited considerable authority with reference to the law of usage and custom as bearing upon the quantum of proof in establishing the meaning of the thumb gesture, but all of the authorities cited have to do with the law of contracts, and we do not think they are applicable here.

It is finally contended that the Court erred in failing to grant a new trial based upon the ground that the judgment in each case was excessive and not warranted under the testimony.

The granting or refusing of a new trial absolute or a new trial *nisi* for excess in a verdict was a matter within the discretion of the Circuit Court. And this Court is not convinced that the verdict was so excessive as to warrant the conclusion that the Circuit Judge abused his discretion in refusing a new trial. *Duncan v. Record Pub. Co.,* 145 S. C., 196, 143 S. E., 31, at 59; *Bing v. Atlantic Coast Line R. Co., supra; Strickland v. Moskos,* 131 S. C., 247, 127 S. E., 265, and the numerous cases cited in *Strickland v. Moskos, supra.*

Judgment affirmed as to all three cases.

Messrs. Justices Baker and Stukes and Mr. Acting Associate Justice J. Strom Thurmond concur.

Mr. Chief Justice Bonham dissents in so far as relates to punitive damages.

Mr. Justice Carter did not participate in the decision of this case.